## WILEY, BANKS & CO. *vs.* BOYD ET AL.

[BILL IN EQUITY BY CREDITOR TO ESTABLISH AND ENFORCE MORTGAGE.]

1. *Assignment and extinguishment of mortgage.*—A creditor may buy in an outstanding mortgage on his debtor's property, take an assignment of it to himself, and have it foreclosed for his benefit; but, if he simply pays the mortgage debt, and takes from the debtor another mortgage on the property, the former mortgage is thereby extinguished; and a court of equity will not establish and enforce it for his benefit, as against purchasers at execution sale against the mortgagor, after the second mortgage has been declared fraudulent and void as to other creditors.

APPEAL from the Chancery Court of Macon.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by the appellants, on the 7th February, 1859, against J. A. & W. H. Knight, Lewis T. Wimberly, James C. Boyd, and others; and sought to establish and enforce, for the benefit of the complainants, a mortgage on certain real and personal property, which the said J. A. & W. H. Knight had executed to said Wimberly on the 2d January, 1851, to secure the payment of a promissory note therein described. The material facts of the case, as alleged in the bill, are these: On the 9th February, 1852, J. A. & W. H. Knight were indebted to the complainants in a large amount, for goods sold and delivered; and the complainants' claims against them were in the hands of F. M. Reese, an attorney, for collection. At

40

the same time, the Knights were indebted to Wimberly, and had given him a mortgage on a tract of land and several slaves, which was dated the 2d January, 1851, and the law-day of which was the 25th of December, 1851; and Wimberly was about to sell the property under the mortgage. Reese thereupon paid Wimberly the amount of his debt, and took from the Knights another mortgage, which embraced all the property covered by the former mortgage, in addition to other property owned by the mortgagors; and this latter mortgage, the law-day of which was the 1st January, 1858, was intended to secure to the complainants the debt which the Knights owed' them, and the amount thus paid· by them to Wimberly. On the 3d January, 1853, the complainants filed their bill in chancery, asking a reformation of this mortgage, and an injunction against several judgment creditors of the mortgagors who had levied executions on the property. On final hearing in that case, the chancellor held the mortgage fraudulent and void ; and his decree was affirmed by this court on appeal, at its June term, 1855.—See the case reported in 27 Ala. 336–50. The property was afterwards sold under the executions of the judgment creditors, and the several purchasers at the sheriff's sale was made defendants to the bill in this case. The statements of the bill, showing the rights asserted by the complainants under the mortgage to Wimberly, are copied in the opinion of the court. The prayer of the bill was, that the complainants might be subrogated as equitable assignees to Wimberly's rights under the mortgage to him, and that the property might be resold under it. The chancellor sustained a demurrer to the bill, for want of equity ; and his decree is now assigned as error.

W. P. CHILTON, for appellants, cited *Johnson v. Hart*, 3 John. Cas. 329 ; *Peltz v. Clarke*, 5 Peters, 481 ; *Heath v. West*, 6 Foster, (N. H.) 191 ; *Willard v. Harvey*, 5 N. H. 252 ; *Starr v. Ellis*, 6 Johns. Ch. 393.

CLOPTON & LIGON, *contra*, cited *Harvey v. Hurlburt*, 3 Vermont, 561; *Hatch v. Kimball*, 4 Shep. 146 ; *Campbell*

*v. Knight*, 11 Shep. 332; *Tatum v. Hunter & Thomas*, 14 Ala. 557.

STONE, J.—In the case of *Wiley, Banks & Co. v. Knight*, (27 Ala. 337,) the complainants in the present suit sought to enforce a mortgage made by J. A. & W. H. Knight, to secure a debt to complainants of nine thousand five hundred dollars. Part of the consideration of that mortgage was a debt due from the Knights to complainants, and the other part, as the report of that case shows, arose as follows: " The Knights had previously executed a mortgage to one Wimberly on a part of said property, to secure a debt then due and owing from them to him of four thousand four hundred and sixty.dollars; that said mortgage to Wimberly had been duly recorded, and was a valid and subsisting lien on the property covered by it; that complainants, being wholly unable to obtain any security for their said debt without assuming said Wimberly's debt, did assume said debt, and have since paid a large portion of it, and hence the amount of their mortgage debt is these two debts combined." The object of that bill was to secure to complainants the property conveyed by the mortgage to them, against execution creditors of the said Knights. By the judgment of this court, the mortgage from the Knights to complainants was pronounced fraudulent against the creditors of the Knights; and the bill filed by Wiley, Banks & Co. in that case was dismissed on that ground.

It was argued in that case, that if the mortgage to Wiley, Banks & Co. were pronounced fraudulent, then the mortgage to Wimberly should be set up for their benefit. To that argument this court responded: "To proceed and render a decree, setting up the Wimberly mortgage, and pronouncing that void which is set up in the bill, would be to render a decree which would not only be unsupported by the allegations of the bill, but predicated upon a state of facts precisely the opposite of those which are charged; for it would be to declare null and void a deed which the complainants set up as valid and effectual, and

on which they ground their title for relief, and to set up a deed as subsisting which the complainants allege has been fully paid and discharged. So that, without intending to decide whether complainants can have any relief on account of their payment of the mortgage to Wimberly upon a proper application, it is clear they can obtain no relief under the case as now presented."

After that decree was pronounced, the execution creditors of the Knights sold the property covered by the mortgage to Wimberly, and various persons became the purchasers at the execution sale. Those persons are made defendants to this suit; and the object of the present bill is to set up the Wimberly mortgage, for the benefit of Wiley, Banks & Co., and to have the property, thus sold, condemned to resale under the Wimberly mortgage, of which the complainants claim the ownership. The averments of their bill, bearing on the question of their claim to the mortgage and the debt secured by it, are the following:

"And the debt of the said Knights to the said Wimberly being past due, and the said Wimberly being about to sell the said property embraced in said exhibit C," [the mortgage,] "which had been duly recorded, and constituted a valid and subsisting lien on said property in favor of said Wimberly," Frank M. Reese, esq., "was authorized, as the agent and attorney of orators, to pay up to said Wimberly the said amount due from said Knights, and to take up from said Wimberly the said notes of said Knights, and to take from said Knights a deed of trust, or mortgage, on the same property embraced in said first deed, with other property owned by said Knights, to secure not only the sum paid to said Wimberly by your orators, but also the amount due your orators for goods said Knights had purchased from them as before stated. 2.—Thereupon, on the 9th day of February, 1852, orators, through their agent and attorney, F. M. Reese, agreed to become responsible to pay, and did pay shortly thereafter, to the said Wimberly, the amount of his said note, less the sum of fifty-four 18-100 dollars, which had been previously arranged, and

took up the said Wimberly's note for $4,460 64, which note they now hold, a true copy of which is hereto attached, marked exhibit B." " 3.—That your orators, through their said agent and attorney, took the mortgage or deed of trust aforesaid, marked exhibit C, and now hold the same uncancelled and unsatisfied, but a subsisting lien in favor of orators upon the property therein mentioned." * * * "6.—Orators charge, that they are the equitable holders and owners of said trust deed to said Wimberly, having advanced to him the amount due thereon; and being the holders of his note on said Knights, as well as of the mortgage given to secure the same, which was duly recorded, and has never been paid, satisfied, or discharged, by said Knights, or either of them, or by any one else."

Various demurrers were interposed to this bill; and the question is presented, whether it makes a case for relief in favor of Wiley, Banks & Co.

The principle seems to be settled, that an incumbrance on property will be kept alive, or considered cancelled, accordingly as the one or the other result will best subserve the purposes of justice, and carry out the intention of the parties. Chancellor Kent thus expressed himself, in the case of *Starr v. Ellis*, 6 Johns. Ch. 395. He added, "It must, at all events, be an innocent purpose, and injurious to no one."

In the case of *Hatch v. Kimball*, (16 Maine, 149,) the court said, "If, at the time the mortgage is taken in, the intention to extinguish it appears, that is decisive." In the same case it is said, at another place: "The deed of release recites a payment of the balance due upon the mortgage, and there is nothing in the transaction to show that it was intended to be kept alive. The tenant has, for a long time, conducted as if he considered it extinguished. And it is now only to be kept on foot, by calling in aid the equitable principle, that it was most for his interest. This equitable presumption can not be admitted, because it is rebutted by a stronger equity," &c.

The case of *Poole v. Hathaway*, (22 Maine, 85,) asserts

the principle in language very like that employed by Chancellor Kent in *Starr v. Ellis, supra.* See, also, *Clabaugh v. Byerly,* 7 Gill, 362–3.

In the present case, the complainants, no doubt, charge the facts of their case as favorably to themselves as truth would allow. They do not affirm that there was any intention to keep the Wimberly mortgage alive, nor is such intention inferable from the statements of their bill. On the contrary, it is manifest from their averments that such was not their intention. The law-day of the Wimberly mortgage had matured when the complainants took up the note of forty-four hundred and sixty dollars. The law-day of the second mortgage was fixed six years later. It certainly never was intended to foreclose until the maturity of the second mortgage; and it is equally clear to our minds that Wiley, Banks & Co. did not intend, at that time, to assert any claim under the Wimberly mortgage. They nowhere assert in their bill, that they purchased the Wimberly note, or took an assignment or transfer of it; nor do they make any equivalent assertion. Their language is, that they *paid* the note to Wimberly. Payment of the debt is an extinguishment of the mortgage; for where there is no debt, there is no mortgage.—*Armitage v. Wickliffe,* 12 B. Monroe, 497 ; *Ladd v. Wiggin,* 35 N. H. 426 ; *Roundtree v. Holloway,* 13 Ala. 357 ; *West v. Hendrix,* 28 Ala. 226 ; 1 Hilliard on Mortgages, 215, *et seq.* ; *Davis v. Maynard,* 9 Mass. 247 ; *Foster v. Athenæum,* 3 Ala. 302 ; *Sanders v. Watson,* 14 Ala. 198.

We think the bill fails to make a case for relief against the purchasers at execution sale; and the result is, that the decree of the chancellor is affirmed,