WASHINGTON BOOTH, and others *vs.* BALTIMORE STEAM
PACKET COMPANY, and others.
BALTIMORE STEAM PACKET COMPANY, and others *vs.*
WASHINGTON BOOTH, and others.

*Account between Mortgagor and Mortgagee, the latter being
in possession—Annual Rests—Insurance—Bill of Sale of
a Steamer held to be a Mortgage.*

As between mortgagor and mortgagee, where the latter is in posses-
sion in the acknowledged character of mortgagee, the principles
are plain and well defined, and are applied for the mutual benefit
of both parties. But where the possession is held adversely to the
mortgagor, with denial of the right of redemption, the principles
of the account are quite different, and are applied with more or
less rigor against the wrong-doer, according to the circumstances
of the case.

In the ordinary case for redemption, where the mortgagee is in pos-
session, acknowledging his true relation to the property, he is
required to account for all issues and profits thereof, so that they
may be applied, after deducting all reasonable expenses and allow-
ances, towards the discharge of the debt and accrued interest. And
the usual decree in such cases, against the mortgagee in possession,
is for an account " of what he has received, or what he might have
received without his own wilful default."

By taking possession of the property, the mortgagee is bound to keep
it in good ordinary repair; and for all such proper and necessary
repairs placed upon the property by the mortgagee, he is entitled
to receive allowance in the settlement of his accounts; and the
amount so allowed will be added to the principal of the mortgage
debt, if not liquidated by the rents and profits charged.

But where the mortgagee in possession repudiates his character and
true relation to the property, and claims to hold as real, absolute
owner, and denies all right of redemption, he thereby disentitles
himself to be treated with the favor of a mortgagee in possession
as such, and is treated as a wrong-doer from the time of the dis-
claimer or repudiation of his true character.

Booth, *et al. vs.* Baltimore Steam·Packet Co., *et al.*

A transaction wherein there had been a transfer.of a steamer from one steamboat company to another, was under proceedings in equity held to be a mortgage, and not an absolute sale. The mortgagee was decreed to account for the mortgaged property, and the profits and hire thereof; and in defining the principles upon which the account should be taken, it was HELD:

1st. That the amount to be allowed the mortgagor for the use or hire of the steamer, from the day when she was surrendered to the possession of the mortgagee, to the time when the character of mortgagee was first openly disclaimed, and the right of absolute ownership asserted, must be adjusted to the value of the steamer at the date of the surrender.

2nd. That taking into consideration the nature of the property, one-third of said value was a proper amount per annum to be allowed the mortgagor during said period for said use or hire; subject however to an allowance to the mortgagee for all necessary and reasonable repairs placed upon the steamer during the same period.

3rd. That the rate of allowance per annum for the use or hire of the steamer, from the time of the disclaimer of the character of mortgagee to the time of the conversion of the steamer by sale, must be one-third of her entire valuation at the date of the disclaimer. But that no deduction from this.allowance was to be made for any repairs placed upon the steamer, during the time she was adversely held and claimed by the mortgagee.

4th. That the sale of the steamer having been made without reasonable opportunity to the mortgagor to redeem, and without advertisement at public sale, it was made at the risk of the mortgagee, and the mortgagee must account for the full value of the steamer at the time the sale was made, irrespective of the price actually received.

5th. That in fixing the value of the steamer at that time however, it must not be enhanced by reason of any improvement in her condition, by way of repairs placed upon her after the date of the disclaimer; but an estimate must be made of her value as she was, or would have been, at the time of the sale, by ordinary careful use without such repairs.

6th. That the annual sum thus ascertained to be due for the use or hire of the steamer while in the possession of the mortgagee, to the extent of the excess over and above the current interest on the mortgage debt, must be applied to sink the principal; and for the purpose of so applying the income arising from the use or hire of the steamer, the account must be stated with annual rests.

7th. That from the time that the mortgage debt should be paid off, or extinguished by the application of the annual proceeds of the hire of the steamer, the account must continue to be stated with annual rests, in order to give the mortgagor the benefit of interest on the sums total, ascertained to be due from the mortgagee at each of such rests, in respect of its holding and finally disposing of the mortgaged property.

8th. That as against any balance that may be found to be due the mortgagor on account of the steamer, the mortgagee will be entitled to a credit for any unsecured indebtedness it may have against the mortgagor.

Subsequent to the date of the mortgage, the policies of insurance on the steamer were taken ont in the name and for the exclusive use of the mortgagee. There was no contract as between the mortgagor and the assured that the policies should be procured for common or mutual benefit, nor was the mortgagor under any obligation to the mortgagee to keep the steamer insured. HELD:

That the mortgagee had no right to have added to the mortgage debt the premiums it had paid for insurance, effected by it without the privity of the mortgagor.

CROSS-APPEALS from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, IRVING, RITCHIE, and BRYAN, J.

*\*R. W. Baldwin, George Hawkins Williams,* and *S. Teackle Wallis,* for Washington Booth and others.

*Randolph Barton,* and *I. Nevett Steele,* for the Baltimore Steam Packet Company.

ALVEY, C. J., delivered the opinion of the Court.

The primary object of the bill filed in this case was to obtain indemnity by the complainants for the depreciation

---

* Mr. Baldwin took no part in the argument.

of, and loss in, the value of the shares of the capital stock of the Powhatan Steamboat Company, held by them, caused, as it was alleged, by the illegal and fraudulent conduct of certain of its directors, who acted in the interest of a rival corporation, the Baltimore Steam Packet Company. The principal relief sought by the bill was denied, for the reasons stated by this Court when the case was here on the former appeal (*Booth, et al., vs. Robinson, et al.,* 55 *Md.,* 419, 428,); but it was held, that a certain transaction, whereby it was made to appear that for the consideration of $40,000, there had been a sale and transfer of the Steamer Petersburg from the Powhatan Company to the Steam Packet Company, was in reality and effect a mortgage, and not an absolute sale, and that being so the latter Company should account for the mortgaged property, and all the profits and hire thereof; and the cause was remanded to the end that such account might be taken. Accounts were stated, and upon the case coming on for hearing upon exceptions to such accounts, the Court below rejected the accounts as stated by the auditor, and in its opinion and order determined and settled the principles and basis upon which the account should be taken, and referred the cause back to the auditor. It is from this order that both parties have appealed to this Court.

To the proper statement of the account it is essential that the value of the steamer at the time she went into the possession and control of the mortgagee should be ascertained, and also the value of her use while in such possession. It is likewise material to ascertain to what extent she suffered depreciation in value, from natural causes, or otherwise, during the time of such possession of the mortgagee, and for what allowances the mortgagee may be entitled for repairs and other expenses, if for any, under the circumstances of the case. And as the mortgagee finally sold the steamer as its own property, and without notice to the mortgagor, it also becomes necessary to de-

termine for what amount the mortgagee shall be charged, as the value of the steamer, for and in respect of such sale.

Before referring to the facts of the case, bearing upon these questions, it would seem to be necessary that we should state briefly the principles of law that must be observed in taking the account between the parties. As between the mortgagor and mortgagee, where the latter is in possession in the acknowledged character of mortgagee, the principles of the account are plain and well defined, and are applied for the mutual benefit of both parties. But where the possession is held adversely to the mortgagor, with denial of the right of redemption, the principles of the account are quite different, and are applied with more or less rigor against the wrong-doer, according to the circumstances of the case.

In the ordinary case for redemption, where the mortgagee is in possession, acknowledging his true relation to the property, he is required to account for all issues and profits thereof, so that they may be applied, after deducting all reasonable expenses and allowances, towards the discharge of the debt and accrued interest. The usual decree in such cases, against the mortgagee in possession, is for an account "of what he has received, or what he might have received without his own wilful default." *Mayer vs. Murray,* 8 *Ch. Div.,* 424, 428; 2 *Fisher on Mort.* (3d ed.) 943. The duty of the mortgagee in possession is well stated by Lord Justice TURNER, in *Kensington vs. Bouverie,* 7 *De G., M. & G.,* 134, 157, where he says, " A mortgagee, when he enters into possession of the mortgaged estate, enters for the purpose of recovering both his principal and interest, and, the estate being, in the eye of this Court, a security only for the money, the Court requires him to be diligent in realizing the amount which is due, in order that he may restore the estate to the mortgagor, who, in the view of this Court, is entitled to it. It is part of his contract that he should do so."

See, also, *Mayer vs. Murray, supra.* By taking possession the mortgagee assumes the duty of treating the property as a provident owner would do. He is bound to keep it in good ordinary repair, or, as some of the cases put it, to keep it in necessary repair. *Godfrey vs. Watson*, 3 *Atk.*, 518; *Sandon vs. Hooper*, 6 *Beav.*, 249. And for all such proper or necessary repairs placed upon the property by the mortgagee he is entitled to receive allowance in the settlement of his accounts, and the amount so allowed will be added to the principal of the mortgage debt, if not liquidated by the rents and profits charged. *Godfrey vs. Watson, supra; Moore vs. Cable*, 1 *John. Ch.*, 388.

Such are the principles of accounting as between the mortgagor and the mortgagee in possession, where the character of mortgagee is acknowledged by the latter. But where the mortgagee in possession repudiates his character and true relation to the property, and claims to hold as real, absolute owner, and denies all right of redemption, he renders himself liable to be treated as a wrong-doer, and as having acted in fraud of the rights of the mortgagor. In such case, it is an attempt to pervert a transaction from its real nature and design, and to give it an effect contrary to the real intention of the parties; and such an attempt is stigmatized by a Court of equity as fraudulent. *Russell vs. Southard, et al.*, 12 *How.*, 148. And the consequences attending such attempted perversion of the transaction is most serious to the mortgagee. He thereby disentitles himself to be treated with the favor of a mortgagee in possession as such, but is treated as a wrong-doer from the time of the disclaimer or repudiation of his true character. As an authority for, and in illustration of this principle, we may refer to the case of the *Incorporated Society vs. Richards*, 1 *Dr. & War.*, 334. In that case the Chancellor, Lord St. Leonards, was pressed to give to the defendant the advantages of a mortgagee, in an ordinary suit for redemption, to which he replied,

" This is a peculiar case, and cannot be treated as the ordinary case between mortgagee and mortgagor. Here you set up a title adverse to the owner ; and when a creditor denies his character as such, and claims as owner, I cannot allow him to fall back on his original character of creditor, as if he had never departed from it. I will never allow a party, who has put the owner at arm's length, to turn round, when defeated, and claim all the benefits attached to the character of a fair creditor." The same principle was adopted and applied in the decision of the case of the *Bank of Australasia vs. United Hand-in-Hand Co.*, 4 *App. Cas.*, 391, 408, by the Judicial Committee of the Privy Council. Many of the facts of that case are very analogous to those of the present. In that case it was held that because the mortgagee set up title to the mortgaged property adverse to the mortgagor and in denial of the right of redemption, he lost the immunities of an ordinary mortgagee, and was held to account as for a wrongful possession.

Coming now to the facts of the case, the first question is, what was the value of the steamer Petersburg, on the 1st of February, 1874, the time when she was surrendered to the possession of the Baltimore Steam Packet Company ? The learned Judge below estimated the value of the steamer at that time, and for all the purposes of the case, at $15,000. But this estimate, we think, was too low. That the real value of the steamer was not less than $40,000 on the 1st of January, 1870, was a fact fully conceded and acted on by both parties at that time. The transaction of the loan of the $40,000, and the subsequent charter of the steamer to the Powhatan Company, fully establish this fact. The insured value of the steamer at that time was also $40,000. The steamer, from that time to the 1st of February, 1874, was in the possession and use of the Powhatan Company, under the charter party of January 1st, 1871, and there is nothing in the evidence

to show that the steamer suffered any material damage
during that time, more than natural decay, and the ordi-
nary wear and tear suffered by the use for which she was
chartered.   She received some considerable repair during
that time, at the cost of the Powhatan Company, and
when she was surrendered to the Baltimore Steam Packet
Company, February 1st, 1874, her insured value, fixed by
the latter company, was then $25,000; and if loss had oc-
curred by the perils insured against, we may be sure that
the full insured value would have been claimed. In fixing
the value of perishable property, and especially of that
like the property in question, there is always more or less
difficulty in arriving at satisfactory results; but upon con-
sideration of all the facts and circumstances of this case,
this Court is of opinion that $20,000 would be a fair and
just valuation of the steamer at that date; and that the
amount to be allowed for her use or hire should be ad-
justed to that valuation.   And as there was considerable
repair placed upon the steamer between the date of her
surrender to the Steam Packet Company and the time of
filing the answer of that company to the bill in this case,
we think the same rate of allowance for use or hire of the
steamer should continue to the latter date.

What, then, is a fair amount, per annum, to be allowed
for the use or hire of the steamer during the period just
mentioned?   This, according to the testimony of Mr.
Robinson, should be the one-third of the entire value of
the steamer.   And though this would seem to be a large
hire, we must take into consideration the nature of the
property—the great wear and tear suffered by use, its
rapid deterioration by non-use, and the constant necessity
for repair to keep it in good running condition.   We
therefore determine that the allowance for the use or hire
of the steamer, from the 1st of February, 1874, to the 20th
of November, 1875, the date of filing the answer, shall be
at the rate, per annum, of one-third of her entire value,

as that value is herein ascertained and determined. This allowance, however, for use or hire of the steamer, is made to the Powhatan Company, subject to the allowance to the Steam Packet Company for all necessary and reasonable repairs placed upon the steamer during the time before mentioned; that is to say, between the dates of February 1st, 1874, and November 20th, 1875. This allowance for repairs, during the period designated, is made upon the principle of accounting before stated, applicable as between mortgagor and mortgagee in possession, where the latter has made no adverse claim to absolute ownership of the property. But from the time that such adverse claim is made or set up as against the mortgagor, a different principle applies, as we have already shown.

Now, the bill in this case was filed on the 7th of August, 1875, and in that bill it is distinctly charged that the transaction between the two companies in regard to the apparent sale and purchase of the steamer Petersburg, for the sum of $40,000, was in reality but a loan, and that the absolute bill of sale was only intended as a mortgage security for the sum advanced, and that, by monthly payments, according to agreement, the mortgagor company had in great part, if not wholly, paid off the mortgage debt. These allegations of the bill were required to be answered, and in the answers of both the Steam Packet Company and Robinson and Shoemaker, filed on the 20th of November, 1875, they expressly deny the allegations of the bill in respect to the alleged mortgage of the Petersburg, and set up claim of absolute ownership in the Steam Packet Company, by virtue of the bill of sale. It is averred in both answers that the steamer passed to the Steam Packet Company by absolute sale and purchase, for the price of $40,000, and not by way of mortgage as security for the loan of that amount. It is thus manifest that from the time of filing the answer the Steam Packet Company assumed to be absolute owner of the steamer Petersburg,

and denied all right of redemption in the Powhatan Company. There is, however, nothing in the case to show, and it is not alleged in the bill, that this assumption of absolute right by the Steam Packet Company, and the denial of the right of redemption, was ever openly made or asserted before the filing the answers in this case. It is also clear there was nothing tortious in the manner of getting possession of the steamer by the Steam Packet Company. On the contrary, that possession was acquired by the peaceful surrender on the part of the Powhatan Company. Indeed this was required by the terms of the charter-party of the 1st of January, 1871. And there has been no effort made to redeem.

It has been urged in argument, that the Steam Packet Company acted throughout as an innocent party, supposing that it had acquired absolute title to the steamer, and not merely the title of a mortgagee; and hence it ought not to be subjected to the severe rule that obtains as between the rightful owner and a wrong-doer. But the testimony of Hazlehurst, Brandt, Gough, and others, and, indeed, the circumstances attending the transaction, would seem effectually to negative that ground of defence. It is fully shown that it was distinctly understood that the right of redemption should exist.

Considering then the case as between the mortgagor and the mortgagee in possession, where the latter has disclaimed the character of mortgagee, after obtaining possession of the property as security only, and subsequently set up claim to hold as absolute owner, the first question is, what was the value of the steamer on the 20th of November, 1875, when the character of mortgagee was first openly disclaimed, and the right of absolute ownership asserted?

In determining this question, we must bear in mind the fact that all the repairs placed upon the steamer up to the 20th of November, 1875, were at the cost of the Powhatan

Company. But, at the same time, we must not overlook the fact of the perishable nature of the property, and its constant tendency to decay, and depreciation in value. With these facts in view, we must examine the other facts that reflect upon the question. At this date, we find the steamer insured by the Steam Packet Company to the value of $15,000, and it was subsequently insured to the value of $17,500; and this we think may be taken as an admission on the part of the Steam Packet Company as to the value of the steamer at the date in question. In consideration of this fact, in connection with all the other evidence in the case, bearing upon the question of value at this particular date, we are of opinion that the sum of $15,000 is a fair valuation, upon which to base the allowance for the use or hire of the steamer, from the 20th of November, 1875, to the time of the conversion by sale, on the 18th of January, 1879. And the rate of allowance, per annum, for such use or hire, must be the one-third of the entire valuation of the steamer, that being the proper rate of allowance, according to the testimony of Mr. Robinson. But from this allowance, no deduction can be made for any repairs placed upon the steamer during the time she was adversely held and claimed by the Steam Packet Company; that is to say, from the 20th of November, 1875, to the 18th of January, 1879. This rule of accounting may seem to be somewhat severe; but it must be remembered, that the repairs for which allowance is refused were placed upon the steamer after the right of redemption had been denied, and after the Steam Packet Company had been admonished by the charges in the bill, that it would be held accountable as mortgagee, but treated the steamer nevertheless as its own.

The next question is, for what amount shall the Steam Packet Company be charged as the value of the steamer at the time it was actually converted by sale? The steamer was sold at private sale on the 18th of January,

1879, for $1200. The testimony of Mr. Robinson is, that at different times, and for reduced prices, the steamer had been offered for sale, during the time she remained in possession of the Steam Packet Company, but without being able to effect a sale at such prices. It does not appear, however, that the steamer was ever advertised at public sale; nor are the circumstances stated under which the offers at private sale were made. Such sale, therefore, does not conclude the mortgagor as to the salable value of the steamer at that time. On the contrary, the mortgagee in possession is chargeable with the full value of the mortgaged property, where it has been sold without authority. *National Bank of Australasia vs. United Hand-in-Hand Co.,* 4 *App. Cas.,* 391. If the Steam Packet Company, instead of disclaiming its character of mortgagee, had acknowledged such character, it would have been competent to it, at any time after the surrender to its possession of the steamer, to have sold the steamer at auction, on giving reasonable opportunity to the mortgagor to redeem, and notice of the time and place of sale. 4 *Kent Com.,* 139; 2 *Sto. Eq. Jur.; sec.* 1031. But that course was not pursued, and the consequence is, the sale was made at the risk of the Steam Packet Company, and that company must account for the full value of the steamer at the time of the sale made, irrespective of the price actually received. In fixing the value of the steamer at that time, however, we must not enhance the valuation by reason of any improvement in her condition by way of repairs placed thereon, after the 20th of November, 1875; as since that date no allowance is made for repairs. We must estimate the value of the steamer as she was or would have been at that time by ordinary careful use, without such repairs. And in estimating her then salable value, under such conditions, we are of opinion, that the amount charged the Steam Packet Company in this behalf by the Court below, being $15,000, was too high as her then salable value.

As already stated, the steamer was sold on the 18th of January, 1879. Policies of insurance upon this vessel had been obtained upon the representation of the Steam Packet Company, in 1877, upon a valuation of $10,000; one policy for $2,500, to expire April the 12th, 1878, and three other policies for the aggregate sum of $7,500, to expire on the 18th of October, 1878,—only three months before the sale. Now, by taking into consideration the probable effect on the value of the steamer of the time that had elapsed since the 20th of November, 1875, to the time of the sale, and the ordinary wear and tear occasioned by use, (assuming that the steamer had been in actual use in the meantime,) this Court is of opinion, in view of all the facts of the case, that the sum of five thousand dollars is a proper and fair amount to be charged to the Steam Packet Company, for and in respect of the conversion of the steamer by sale. The Steam Packet Company must therefore be charged with that sum.

And having thus determined the questions in relation to the annual amount to be charged as hire for the use of the steamer while in possession of the Steam Packet Company, and the value of the steamer itself at the time of sale, and also for what repairs the Steam Packet Company shall be allowed, we are next to determine as to the manner of stating the account, in respect to the interest to be charged therein.

At the time of the surrender of the steamer to the possession of the Steam Packet Company in February, 1874, there was a portion of the mortgage debt of $40,000 still due. The monthly payments, as fixed by the charter-party of the 1st of January, 1871, had been regularly made by the Powhatan Company down to the time of the surrender of the steamer; and by the application of those monthly payments, after deducting the amount paid as wages to the captain of the steamer, (which was proper to be done,) the interest was kept down, and a large

amount of the principal of the mortgage debt was paid off. There was therefore no interest in arrear at that time. And in such state of case, the annual sum ascertained to be due, upon the principles and in the manner before stated, for the use or hire of the steamer while in possession of the Steam Packet Company, to the extent of the excess over and above the current interest on the mortgage debt, must be applied to sink the principal; and for the purpose of so applying the income arising from the use or hire of the steamer, the account must be stated with annual rests. And from the time that the mortgage debt shall be paid off or extinguished, by the application of the annual proceeds of the hire of the steamer, the account must continue to be stated with annual rests, in order to give the mortgagor the benefit of interest on the sums total ascertained to be due from the mortgagee at each of such rests, in respect of its holding and finally disposing of the mortgaged property. *Wilson vs. Metcalfe,* 1 *Russ.,* 535; *Wilson vs. Cluer,* 3 *Beav.,* 140.

There is one other question yet to be noticed, and that is in reference to the claim of the Steam Packet Company to be allowed for insurance premium paid for insurance of the steamer, subsequent to the date of the bill of sale. The policies were in all cases taken out in the name and for the exclusive use of the latter company. In other words, that company insured as owner; and it is not pretended that there was any contract as between the Powhatan Company and the assured that the policies should be procured for common or mutual benefit, nor was the Powhatan Company under any obligation to the Steam Packet Company to keep the steamer insured. In such case, clearly there is no semblance of right in the mortgagee to have added to the mortgage debt, the premiums which he may have paid for insurance effected by him without the privity of the mortgagor. The latter had no interest in the insurance, and could derive no benefit therefrom, in the absence of

·express contract. *Dobson vs. Land,* 8 *Hare,* 216. The claim for this allowance must, therefore, be rejected.

Of course, as against any balance that may be found to be due the Powhatan Company on account of the steamer, the Steam Packet Company will be entitled to a credit for ·any unsecured indebtedness it may have against the former ·company. This we do not understand to be in any manner questioned.

With these views, we shall reverse the order appealed from, on both appeals, and remand the cause that it may be referred to the auditor for the statement of an account in accordance with the principles of the foregoing opinion. The costs of the appeals in this Court to be paid by the parties thereto, each the one-half of such costs.

*Order reversed, and*
*· cause remanded.*

