[Gresham v. Ware.]

# Gresham *v.* Ware.

*Bill in Equity for Redemption, by Mortgagor and Surety.*

1. *Redemption by mortgagor as surety; prior application of property of co-mortgagor as principal.*—When the principal and his surety jointly execute a mortgage to the creditor, conveying lands which belong to them separately, the surety has an equity to require that the lands of the principal shall be first sold and applied to the satisfaction of the debt; and he may, after default, maintain a bill to redeem his land, asking a foreclosure as to the property of the principal, and offering to pay the balance that may remain due.

2. *Merger of legal and equitable estates in mortgagee, by purchase of equity of redemption; intervening equity of surety.*—As a general rule, when the legal and the equitable titles become united in the mortgagee, the mortgage is merged in the unity of possession; but there is no merger, when it is to the interest of the mortgagee that the titles be kept distinct, nor when there is an intervening right in a third person; and when the mortgagee purchases the principal's equity of redemption, without the consent of the surety, the equity of the latter to have the property of the principal first applied to the payment of the common debt will prevent a merger.

3. *Same.*—If the purchase of the principal's equity of redemption is made with the consent of the surety, but under an agreement by the mortgagee to take possession, account for the rent, and sell under the power contained in the mortgage, but with a modification of the prescribed terms, there is no merger, and the equity of the surety remains unimpaired; nor can the terms of this agreement be changed, to his prejudice, by a subsequent agreement between the principal and the creditor, to which he is not a party.

4. *Protection to purchaser for value without notice.*—A purchaser for value, without notice, is entitled to protection against the equity of a surety to have the property of his principal first applied in satisfaction of the common debt; but, to make out such defense, the purchaser must not only state his purchase, and the *bona fide* payment of the consideration, with circumstantiality of detail, but must deny notice of the outstanding equity, and knowledge of any fact sufficient to put him on inquiry, down to the time of his payment of the purchase-money; and this denial must be positive, and must be made whether notice is charged or not.

5. *Revision of register's findings on facts.*—As to conclusions of fact drawn by the register on a reference, all reasonable presumptions will be indulged in support of his rulings; and they will not be disturbed unless they are based on wrong legal principles, or are clearly shown to be erroneous on the evidence.

6. *Rents and profits, against mortgagee in possession.*—On statement of the account between mortgagor and mortgagee, under a bill to redeem, a mortgagee in possession will only be charged with rents actually received, unless he has been guilty of willful default, or gross negligence; and the rents must be estimated on the value of the property when he took possession, without regard to permanent improvements afterwards erected by him.

7. *Compensation for permanent improvements.*—A bona fide occupant

[Gresham v. Ware.]

under claim of title, who erects permanent and valuable improvements, is entitled to compensation, at least as a set-off against mesne profits; but knowledge, or notice of adversary rights, is fatal to the claim for compensation; and a mortgagee who repudiates the relation, or a purchaser from him with notice, is regarded as a wrong-door, and is not entitled to compensation.

8. *Usury in mortgage; estoppel by admission in answer.*—If a mortgagee, in his answer to a bill to redeem, admits the charge of usury, he is estopped from adducing evidence to the contrary; and he can only be allowed legal interest from the date of the loan.

9. *Damages on protest of bill of exchange; as between payee and accommodation acceptor.*—Statutory damages, accruing on the protest of a bill of exchange, are a part of the debt, although an accommodation acceptor is not personally liable for them; yet, being secured by the mortgage, so far as the property of the drawer (and principal debtor) is concerned, they must be allowed in the account, under a bill to redeem by the surety, or accommodation acceptor.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 21st February, 1882, by Mrs. Azenath A. Ware, against L. Gresham, Thos. C. Bingham, and Robert Y. Ware, and sought, principally, to redeem a house and lot in the city of Montgomery, which the complainant had mortgaged to said Gresham. The mortgage was executed by the complainant and said Robert Y. Ware, who was her son, jointly, and it also conveyed a tract of land in Elmore county, called the "Molton place," which belonged to said Robert Y. Ware. The mortgage was dated January 24th, 1872, and was given to secure the payment of a bill of exchange for $11,200, drawn by said Robert Y. Ware on the complainant, by her accepted, payable to Thos. J. Molton, and by him indorsed in blank. The bill alleged, that this bill of exchange was given for money borrowed by Robert Y. Ware from said Gresham, at a usurious rate of interest, and that complainant accepted it only for the accommodation of said Robert Y., and as his surety; and it prayed that the mortgage might be foreclosed as to the tract of land in Elmore county, and the proceeds of sale applied to the payment of the mortgage debt, offering to pay the balance that might be found due if anything. It was alleged, also, that Gresham took possession of the house and lot in Montgomery, under a pretended sale under the power contained in the mortgage, in October, 1881, and was still in possession when the bill was filed ; that he also took possession, in 1873, of the tract of land in Elmore county, and continued in possession until some time during the year 1880, when he sold and conveyed to said Thos. C. Bingham ; and the bill sought to charge him with the rents of both places during his possession, and alleged that Bingham was chargeable with notice of the complainant's equitable rights.

An answer to the bill was filed by Gresham, in which he

13

[Gresham v. Ware.]

admitted the charge of usury, but not to the extent charged in the bill, and also admitted his possession of the mortgaged property during the years specified. But he alleged that, in June, 1873, Robert Y. Ware having become a bankrupt, he bought the equity of redemption in the lands from the assignee, by and with the written consent of the complainant; that afterwards, in April, 1879, he purchased the equity of redemption from said Ware himself, at the agreed value of $6,900, which was entered as a credit on the mortgage debt, and that this was done with the knowledge and consent of the complainant; and he insisted that the mortgage was thereby foreclosed as to the tract of land. Copies of the complainant's consent to the purchase of the equity of redemption from the assignee in bankruptcy, and of Robert Y. Ware's subsequent conveyance, were made exhibits to the answer. Bingham filed a formal answer, adopting the answer of Gresham.

On final hearing, on pleadings and proof, at August term, 1883, the chancellor rendered a decree, holding that the complainant was entitled to the relief prayed in her bill, and ordering a statement of the accounts by the register. On the statement of the accounts by the register, under this order of reference, numerous exceptions were reserved by both parties; and the cause being submitted to the chancellor again, he sustained some of the exceptions, by a decree rendered in vacation, in August, 1884, and ordered a re-reference.

In December, 1884, an appeal from this last decree, which was entered as of the October term, 1884, was sued out by the defendants; and numerous assignments of error were made, forty-seven in all, some of which were founded on the decree rendered in August, 1883. The appellee submitted a motion to strike out all assignments founded on that decree, on the ground that an appeal from it was barred, and several others, which were founded on portions of the last decree alleged to be interlocatory. The material facts bearing on these assignments are stated in the opinion of the court.

R. M. WILLIAMSON, and ARRINGTON & GRAHAM, for appellant.

GEO. F. MOORE, contra. (No briefs on file.)

CLOPTON, J.—Robert Y. Ware and the complainant executed, January 24, 1872, a mortgage to the defendant Gresham, on lands situate in Elmore county, known as the "Molton place," which were the individual property of Robert Ware, and on a house and lot in the city of Montgomery, which was the individual property of complainant, to secure the payment of a bill of exchange, drawn by Robert Ware on, and accepted

by complainant, for the sum of $11,200, and payable twelve
months after date.   The bill is brought by complainant, to re-
deem the house and lot.   It alleges that the mortgagee entered
into possession of the Molton place in 1873, and, as mortgagee
in possession, has received the rents from 1873 to 1881, in-
clusive, which, if applied to the mortgage debt, will, on proper
accounting, leave but a small amount, if anything, due; that
complainant is an accommodation acceptor, the surety of Robert
Ware; and, if anything is unpaid on the mortgage debt, his
individual property should be first applied to its payment.

The claim of complainant, to have her property exonerated
by the antecedent appropriation of the property of Robert
Ware, is founded on the equitable principle, that a debt shall
be charged on the person or estate primarily bound,—an equity,
not dependent on contract, but growing out of the relation of
principal and surety, and resting on natural justice.   It is of
frequent and liberal application in the administration of equity
jurisprudence, and extends to all cases,—no rights of third
persons intervening,—where one has paid a debt, for which he
was not primarily liable, but which he was under a legal obli-
gation to pay, or was compelled to pay for the protection of
his interests, the creditor having, at the same time, collateral
securities which he is entitled to apply to its payment.   On
this principle is based the right of subrogation; and on analo-
gous principle, if a creditor has a paramount lien on two funds,
he will be compelled, in favor of a creditor having a subsequent
lien on only one of them, to first resort to the fund singly
charged, no undue delay or prejudice being caused thereby;
or, if he has already exhausted the fund doubly charged, with-
out taking the other, the subsequent creditor is entitled to satis-
faction out of the other fund, to the extent his own has been
thus appropriated.— *Watts v. Eufaula National Bank*,
76 Ala. 474; *Ellsworth v. Lockwood*, 42 N. Y. 89; *Dec. &
Hud. Cass. Co.s' Appeal*, 2 Wright, 512; 20 Vt. 530.

A like equity arises in the case of a mortgage, executed by
the principal debtor and the surety, on the separate and indi-
vidual property of each.   Should the mortgagee bring a bill
for a foreclosure, and the property of the principal debtor,
having been first sold, proves sufficient to discharge the mort-
gage, the property of the surety will be released; or, if insuf-
ficient, and the property of both is sold, when the proceeds are
brought into court for appropriation, the portion accruing from
the property of the principal will be first applied, and the de-
ficiency paid from the proceeds of the property of the surety,
to whom any surplus will be awarded.— *Vartie v. Underwood*,
18 Barb. 561.   On a bill for redemption by the surety, the
amount to be paid will be ascertained in like manner, and the

[Gresham v. Ware.]

equities adjusted on like principles. The rights of the mortgagee will not thereby be delayed, or obstructed, or impaired, and the surety is not put to circuity of action. The rights of the parties are ascertained and determined in one suit; the mortgagee and surety are both protected, and equity administered. In the case of such mortgage, the surety need not wait the, pleasure of the mortgagee as to the time of foreclosure, and suffer his property continued under the incumbrance. As, after the debt has become due, a surety may file a bill to compel the principal to pay it; so, after forfeiture, he may bring a bill for the redemption of his property from a mortgage covering the property of both the principal and himself, without first paying the entire mortgage debt; and in the same suit, as ancillary to redemption, compel the application of the principal's property to its payment. It is sufficient if he pays, or offers to pay, the balance that may be due.

It is insisted by the defendants, without controverting the general rule, that if the complainant is an accommodation acceptor, which they deny, the mortgage has been extinguished as to the Molton place, by the coalescence of the legal estate and the equity of redemption in the mortgagee, and that she has waived her equity. This contention is based on the following facts: In December, 1872, Robert Ware was adjudicated a bankrupt. In December, 1873, the mortgagee purchased from the assignee in bankruptcy the equity of redemption, for one hundred and fifty dollars, by the consent in writing of the complainant, given in June preceding; and in 1877, Robert Ware, in consideration of the sums expended in paying taxes and making repairs, and of a credit of $6,900 on the mortgage debt, conveyed to the mortgagee the Molton place in absolute right, and relinquished his equity of redemption ; to which arrangement, it is claimed, the complainant consented.

As a general rule, when the legal becomes united with the equitable title in the mortgagee, the mortgage is merged by the unity of possession ; but, if it is to the interest of the mortgagee to keep the titles distinct, there is no merger, and an intervening right between the mortgage and the equity will prevent a merger.—*Evans v. Kimball*, 1 Allen, 240 ; *Lowd v. Lane*, 8 Met. 517. If, therefore, the mortgagee had purchased Ware's equity of redemption without the consent of complainant, it would not have operated an extinguishment of the mortgage as against her equity ; or, if it did, she would have been released from the debt, and her estate discharged from the mortgage, to the extent of the value of the Molton place. But, having purchased the equity of redemption from the assignee, by and in pursuance of her consent in writing, the mortgagee must be held to the terms of the consent. Her

agreement to the purchase is on this condition : "*That he take possession of said Elmore land, and of the rent note for 1873, and account for the same under a sale thereof under the power contained in said mortgage, and for the rent this year; and that said sum of $150.00 be tacked to said mortgage debt as a part thereof; said Elmore county tract of land not to be sold under the said mortgage, before the first day of October, 1873, and, when sold, to be partly for cash, and partly on credit,— say not exceeding one half cash, and the balance on one and two years time, with interest on the credit payments from the day of said sale.*"    The effect and meaning of the agreement are apparent.    The mortgagee was to take possession, sell under the power contained in the mortgage, with a modification of the terms of sale, and account for the proceeds of sale, and for the rents and profits, as mortgagee in possession.    It was expressly stipulated, that the purchase of the equity of redemption from the assignee should not operate an extinguishment of the mortgage ; but that it should remain open and operative for the benefit and relief of complainant.    Such agreement will prevent a merger as against the rights of a surety ; and the equity of complainant is unaffected by the purchase of the equity of redemption from the assignee. *Cullum v. Emanuel,* 1 Ala. 23.

If complainant did not consent to the arrangement, by which the conveyance was made by Robert Ware in 1877, such conveyance or arrangement can not impair or defeat her equities.    A creditor, having securities which he is entitled to apply in discharge of the debt, must so apply them, or hold them ready to be so applied, for the benefit of the surety.    No agreement between the creditor and the principal, to which the surety is not a party, will defeat the surety's right of subrogation.    If the creditor renders such securities unavailing, the surety will be released *pro tanto.*    So, likewise, the mortgagee can not, by an arrangement with Robert Ware, to which complainant did not consent, defeat her equity to have the Molton place sold, and the proceeds of sale, with the rents, applied in satisfaction of the mortgage; or cancel or modify the agreement of June, 1872.    What would have been its effect, had complainant consented thereto, in view of the fact that Robert Ware had no right or interest in the property which was the subject of conveyance, it is unnecessary for us to decide.    The chancellor found the controverted questions of fact—her suretyship and consent to the conveyance—in favor of complainant.    The mortgagee testifies, that the paper evidencing her consent was delivered to him *in 1877,* and that he has not seen it *since,* though he has made search for it ; yet his attorney testifies, that he saw and read it *in 1879,* when Bingham and

the mortgagee were both present, and that Bingham took it away with him; and Bingham states, that all the other papers were delivered to him in May, 1880; but Bingham is not examined as to the possession, loss, or contents of the paper. Considering that the burden is on the defendants to establish the genuineness and contents of the lost paper; that proof must be clear and satisfactory; the somewhat vague and discrepant recollection of the witnesses as to its terms, and the positive denial of complainant and T. J. Molton, who is siaid to be a subscribing witness, whatever may be our opinion as to the preponderance of the evidence, it does not clearly appear that the findings of the chancellor are erroneous. We must, therefore, on appeal, take and consider the facts as found by him.

It is further insisted, that the equity of complainant ought not to be enforced against the defendant, Bingham, who purchased the Molton place from the mortgagee in 1880. Generally, such equity will not be enforced, if its effect is to destroy or impair the rights of an innocent purchaser for value, such purchaser having an equal claim to the consideration of a court of equity. But Bingham does not, either in his answer or otherwise, bring himself within the rule of protection. To make out the defense of innocent purchaser for value, the purchaser must not only state the purchase and the *bona fide* payment of the consideration, with circumstantiality of details, but also must deny notice of the outstanding equity, and knowledge as to any fact sufficient to put him on inquiry, previous to and down to the time of paying the money; and the denial must be positive and not evasive, whether notice be or be not charged by the bill.—*Ledbetter v. Walker*, 31 Ala. 175; *Wells v. Morrow*, 38 Ala. 625; *Hooper v. Strahan*, 71 Ala. 75; *May v. Wilkinson*, 76 Ala. 543. Bingham does not state the purchase, the contents of the deed, or the payment of the money, other than by adopting the general statements in the answer of the mortgagee; and there is no pretense of a denial of notice. In no appropriate manner does he bring before the court the claim of a *bona fide* purchaser without notice, and his rights as such must be considered as eliminated from the case.

The remaining questions arise on the rulings of the chancellor on exceptions to the report of the register, mainly involving the principles on which a mortgagee in possession shall be held to account for rents, and be allowed compensation for repairs and permanent improvements. So far as the assignments of error relate to the conclusions of fact drawn by the register from the evidence before him, all reasonable presumptions are indulged in support of his rulings, and they will not be disturbed, unless it appears they are based on wrong legal princi-

[Gresham v. Ware.]

ples, or are clearly shown to be erroneous on the evidence.—
*Winter v. Banks*, 72 Ala. 409.

By the agreement of June, 1873, the mortgagee was to account for the rent of that year. It appears from his own evidence, that when he sent his son, in November, to look after and collect the rent, there were crops on the place liable to its satisfaction; and Jackson, the tenant, testifies, that it could have been collected. When the mortgagee went in December, the crops had been removed. No effort was made in the meantime to collect the rent, though the statute armed him with summary process. The rent was lost by the want of reasonable diligence, and he is chargeable therewith.

From the undisputed evidence, the mortgagee received five hundred dollars for the rent of 1874, and five hundred and fifty dollars for each year from 1875 to 1878, inclusive. It is true, the witnesses vary in their estimate of the annual rental value, from $500 to $1,000.; but there is an absence of evidence tending to show that greater rent was not obtained by reason of the neglect of the mortgagee. On a bill to redeem, a mortgagee in possession will not be held accountable for anything more than the rents actually received, unless there has been willful default, or gross negligence, which, in such case, is the measure of reasonable diligence.—*Barron, Meade & Co. v. Paulling*, 18 Ala. 292; *Dozier v. Mitchell*, 65 Ala. 511; *Daniel v. Coker*, 70 Ala. 260. Under the circumstances, the mortgagee should not have been charged with more rent than he actually received for the years mentioned. The rents, with which the mortgagee is chargeable, must be estimated on the value of the property when he took possession, and not on the increased value by reason of permanent improvements subsequently made.—*Dozier v. Mitchell*, 65 Ala. 562.

A *bona fide* occupant under claim of title, who makes valuable and permanent improvements, is entitled to compensation, certainly by way of set-off against the *mesne* profits. A *bona fide* occupant has been defined to be "one who not only honestly supposes himself to be vested with the true title, but is ignorant that the title is contested by any other person claiming a superior right to it." If a mortgagee after foreclosure, or a purchaser at or after the foreclosure sale, makes permanent improvements, in the honest belief that he has acquired the absolute title, compensation should be allowed on a bill for redemption. Knowledge, or actual notice of the adversary right, is fatal to the claim for compensation. The allowance is made on equitable grounds, and it is not equity to allow it to one who has not acted in good faith; otherwise, a mortgagor might be improved out of his property, by increasing the burden of redemption.—*Gordon, Rankin & Co. v. Tweedy*, 74 Ala. 232;

[Gresham v. Ware.]

*Learned v. Corley*, 43 Miss. 687; *Woodhull v. Rosenthal*, 61 N. Y. 382.

And when a mortgagee in possession repudiates his relation as such, and claims the property as his own, denying the right of redemption, he will be treated in equity as a wrong-doer, and is not entitled to compensation for permanent improvements; and a purchaser from him with notice has no greater right.—*Booth v. Baltimore So. Packet Co.*, 63 Md. 39. On like principles, a mortgagee, who, disclaiming his character as such, claims absolute right to the property of the principal debtor, primarily bound, will not be allowed for permanent improvements thereon, against the equity of a surety seeking to redeem his own property.

The refusal of the register to allow compensation for permanent improvements was evidently based on his conclusion from the evidence, that Bingham had actual notice of complainant's equity, and of the infirmity in his own title. The chancellor approved his conclusion, and the evidence tends strongly to sustain it. Bingham had knowledge of the mortgage, and all the other written instruments, which he states were delivered to him in May, 1880. Some of the improvements were erected after the filing of the bill; and the reasonable inference is, that with knowledge of complainant's adverse right, he made the improvements, relying on his being able to successfully defend against her claim. Having notice of the infirmity of his title, his opinion and belief of its superiority is not the good faith which equity requires. In such case, an occupant makes improvements at his peril.

The mortgagee was entitled to be allowed only the principal, with legal interest from the date of the loan. He admits the usury in his answer; that is, that the bill of exchange was given in consideration of a loan of ten thousand dollars, at twelve per cent. interest *per annum*. This admission in the answer is an estoppel on the defendant from introducing evidence to show it is untrue.—*McGehee v. Lehman, Durr & Co.*, 65 Ala. 316.

The statutory damages accruing on the protest of a bill of exchange, constitute part of the debt, and are recoverable in an action on the bill. It is true the acceptor is not personally liable for them. They are, however, secured by the mortgage so far as respects the property of Robert Ware, equally with the principal and interest; and in ascertaining the amount to be paid by complainant on redemption, and the extent to which his property shall be applied in exoneration of hers, all claims and demands having, by the mortgage, a valid lien on his property, must be taken into the estimate. Relief, founded on equitable grounds, will not be granted, to the prejudice of

[Wolffe v. The State.]

an equity of the mortgagee. The damages and protest fees should have been allowed.

The appeal is taken from the decree rendered at the October term, 1884, which is partly final and partly interlocutory. In connection with the decree of August, 1883, it settles all the equities between the parties, except such questions as arise on the reference ordered, and decrees a sale of the property. In this respect, it is final, and the subject of appeal; but, so far as the chancellor rules on the report of the register, and the exceptions, it is interlocutory, a reference as to subsequent interest and rents being undisposed of. To the extent the decree is final, as above stated, we discover no error, and it is affirmed. Without affirming or reversing the decree so far as interlocutory, we have deemed it proper to consider the assignments of error relating to the rulings on the exceptions to the report of the register as directions in stating the account.

Our conclusion makes unnecessary a decision of the motion to strike out several assignments of error.

The costs of appeal will be divided between the parties.