# Daniel *v.* Coker.

*Bill in Equity by Purchaser from Mortgagor, against Mortgagee, for Account of Rents and Profits, Waste, etc.*

1. *Liability of mortgagee for rents and profits, and for waste.*—When a mortgagee enters into possession of the mortgaged premises before foreclosure, whether before or after the law-day, he holds as the bailiff or steward of the mortgagor or his assignee, and may be made to account, under a bill to redeem or to foreclose, for the rents and profits received, and for waste wantonly committed, or suffered through gross negligence; but these liabilities only attach when he enters *as* mortgagee, in recognition of the mortgage: if he enters as a trespasser, or as the tenant of the

[Daniel v. Coker.]

mortgagor or his assignee, whatever liabilities he may thereby incur, they can not be enforced in equity under a bill for an account and re-demption.

APPEAL from the Chancery Court of Cherokee.

Heard before the Hon. H. C. SPEAKE.

The bill in this case was filed on the 26th August, 1878, by John W. Coker, against David C. Daniel; and sought, princi-pally, an account of the rents and profits of a tract of land which was in the defendant's possession, and of the waste alleged to have been committed and suffered by him, and also to recover the possession. The land contained one hundred and twenty acres, and had belonged to one Andrew Poore, who, by deed of bargain and sale, with covenants of warranty, sold and conveyed it to the complainant. This deed was dated De-cember 17th, 1864, and recited as its consideration the present payment of $1,500; and a copy of it was made an exhibit to the bill, as showing the complainant's title. The bill alleged, that the complainant entered into the possession of the land under his said purchase and conveyance, and continued in pos-session thereof "until some time in December, 1866, when one F. A. Harwell, who was occupying said land as his tenant, re-moved from said land a little while before the expiration of his term, and said defendant thereupon entered into the possession of the same, without the knowledge or consent of complainant; and he, his tenants and vendees, have thence hitherto continued to possess and use said land, and have appropriated the proceeds thereof to his and their own use," and have committed and suffered waste.

Said Andrew Poore, who was the father-in-law of the de-fendant, was, on the 4th February, 1859, by the Probate Court of said county of Cherokee, appointed guardian of the estates of two minors, William H. and John B. Shropshire; and he thereupon gave a bond for the faithful discharge of his duties as such guardian, in the penal sum of $6,000, with said D. C. Daniel, Lewis Cunningham, and Joseph L. Cunningham, as his sureties. Desiring to indemnify his sureties against any loss on account of the liability thus assumed for him, said Poore executed a deed on the 1st May, 1861, by which he conveyed to W. L. Whitlock, as trustee, the land afterwards sold to Coker, with other lands, slaves, horses, plantation tools, furni-ture, &c., upon the following trusts: "that the property above mentioned shall remain in the possession of the said party of the first part, as if the same were really his own, until as here-inafter provided; that if the said debt, or any part of the same, shall remain due and unpaid when the said children shall arrive at twenty-one years of age each, then, whenever the said D. C. Daniel, Lewis Cunningham and Joseph L. Cunningham, their

[Daniel v. Coker.]

agents or attorneys, shall require the said Whitlock, trustee as aforesaid, in writing, to execute the trust herein reposed in him, he, the said Whitlock, trustee as aforesaid, shall immediately, upon such requisition being made, take possession of said property, which possession the party of the first part agrees to surrender to the said trustee when the same shall be demanded, and shall sell the same at public outcry," &c.; "and out of the proceeds of sale, the said Whitlock, trustee as aforesaid, shall first pay the costs of authenticating this deed, and then pay to the said D. C. Daniel, Lewis Cunningham, and J. L. Cunningham, their executors," &c., "all the money remaining due after paying for the support of the said children to maturity, and the remainder, if any, shall remit to the party of the first part; but, if the said party of the first part shall well and truly pay to the said D. C. Daniel, Lewis and J. L. Cunningham, the money which may be due to the aforesaid children, after deducting their support and the cost of authenticating this deed, then this conveyance shall be void," &c.

On the 29th November, 1871, Wm. H. and John B. Shropshire, the latter being still a minor, filed their bill in equity against Poore, the sureties on his bond as guardian, and said Whitlock; alleging the execution of the bond and deed as above set out, the insolvency of the guardian and his sureties, and that the guardian was largely in default; and asking that his accounts might be stated and settled, that they might be subrogated to the rights of the sureties under the deed of trust, that the property conveyed by the deed might be sold, and the proceeds of sale applied to the satisfaction of whatever balance might be found due to the complainants on the settlement of the guardian's accounts. Poore died in 1872, before filing his answer to the bill, and the suit was regularly revived against H. W. Carden, as his administrator. Decrees *pro confesso* were afterwards taken against all the defendants, and at the January term, 1874, a decree was rendered in favor of the complainants; ascertaining the balance due to each of them, on settlement of the guardian'a accounts, to be $500; subrogating them to the rights of the sureties under the deed of trust, and ordering the property conveyed to be sold for the satisfaction of the balance found due, with the costs.

The bill in this case alleged, that some of the property conveyed by the deed of trust was sold under this decree, the proceeds of sale amounting to $579, which was applied in part payment of the decree; alleged, also, that all the personal property conveyed by the deed had gone into the possession of the said Daniel, and was so admitted to be by him by the decree *pro confesso* against him in that suit; that he had also received from said Poore, in the year 1868, the possession of another

[Daniel v. Coker.]

tract of land, not conveyed by the deed of trust, and continued in the possession thereof up to the filing of the bill in this case, receiving the rents and profits to his own use, which ought to be applied as a credit on the decree in favor of the minors; that he had not in fact sustained any loss on account of his suretyship on the guardian's bond, the amounts with which he was chargeable being largely in excess of the balance appearing due on the decree; and that the register of the court was, at his instance, proceeding to sell under the decree the lands claimed by the complainant. The bill therefore prayed an injunction of this threatened sale, an account of the several matters with which the defendant was sought to be charged, the restoration of the possession of the land, and general relief; and offered to pay any balance that might be found due to the defendant on the statement of the account, if necessary to relieve the land of the incumbrance created by the deed of trust.

The defendant answered the bill, admitting the execution of the guardian's bond, and of the deed of trust to Whitlock, and the proceedings had under the bill filed by the Shropshires; admitting, also, his possession of the land, but denying his liability to account for the rents and profits; denying, also, that he committed or suffered any waste on the land, and that he had received from Poore the personal property conveyed by the deed to Whitlock. As to the decree in favor of the Shropshires, he alleged that he had allowed a decree for $1,000, with costs, to be entered against him, in compromise of a much larger amount, which was the actual default of Poore as guardian, and for which the sureties on his bond were liable, and had satisfied the decree. He alleged that he took possession of the lands here sued for, at the instance of said Poore, to protect them against waste; and assailed the consideration and validity of the complainant's deed, on the ground that it was procured by false representations, and only Confederate money was paid. He set up in bar of the relief sought by the bill, by way of plea, the proceedings had in the suit instituted by the Shropshires, and also the proceedings had under another bill filed by the complainant in this suit; and he demurred to the bill for want of equity. The proceedings had in the former suits mentioned are shown by the reports of those cases: *Coker v. Whitlock*, 54 Ala. 180; *Coker v. Shropshire*, 59 Ala. 542.

The chancellor overruled the demurrer and the pleas, and on final hearing, on pleadings and proof, rendered a decree declaring, 1st, that the deed of trust to Whitlock enured to the benefit of the wards, as well as of the sureties on the guardian's bond, and they had a right to have the property sold in satisfaction of any balance due them; 2d, that the wards having

transferred the decree in their favor to Daniel, the defendant in this suit, he was entitled to have the property conveyed by the deed sold for the satisfaction of the decree, with interest thereon, "subject to all legal credits hereinafter mentioned;" and, 3d, that he must account for all the personal property which he had received, of that conveyed by the deed, and for the rents and profits of the real property. He therefore ordered a reference to the register, directing him to ascertain, 1st, "how much is due to the defendant on said decree, with interest from the time of its rendition;" 2d, "how much has been paid on said decree, by whom paid, and when, calculating interest on each payment;" 3d, how much of the property, real and personal, conveyed by said deed of trust, has been received by the defendant, the value thereof, and when received, calculating interest," &c.; 4th, "how much is the yearly rental value of the land claimed by the complainant, for each year that it has been in possession of the defendant, or of those claiming under him, deducting therefrom the annual taxes and all necessary improvements, calculating interest on the balance for each year;" 5th, "how much, if any, said property has been damaged by the defendant, or those claiming under him, by the removal of the timber or buildings, calculating interest thereon," &c.

From this decree the defendant appeals, and here assigns as error the overruling of his demurrer and pleas, and that part of the decree holding him liable for rents and damages.

S. K. McSPADDEN, for appellant.

BRICKELL, C. J.—In *Coker v. Whitlock* (54 Ala. 180), and in *Coker v. Shropshire* (59 Ala. 542), it became necessary to consider the nature and character of the deed by which Poore conveyed the lands, the subject-matter of the suit, to Whitlock as trustee. We there held, that the deed, though in form a deed with trusts, in its legal operation and effect was a security for the indemnity of the sureties of the grantor as guardian, against the contingent liability incurred by them in joining the grantor in the execution of the bond required of him; that it does not differ materially from a mortgage: that the estate of the trustee, and his rights, were essentially those of a mortgagee, and the estate remaining in the grantor was that of a mortgagor,—an equity of redemption; that the operation of the deed was not to transfer the possession, or the right of possession, immediately to the trustee, but that the grantor had the right of remaining in possession, taking the rents and profits, until the wards became of age, a liability should be fixed on the sureties, and they should request the trustee to sell for their indemnity;

[Daniel v. Coker.]

that the sale and conveyance of the lands to the appellee by the grantor, before the law-day of the deed, passed to the appellee the equity of redemption, and the right of possession; that as the alienee of the grantor, on a valuable consideration, the appellee had an equity, when it became necessary to foreclose the deed of trust, to compel an exhaustion of the other property conveyed by it, so far as such property could, by reasonable diligence, be reached and made available, before resorting to the lands conveyed to him in fee simple, with covenants of warranty.

The purposes of the present bill seem to be—first, to compel Daniel, the appellant, one of the original beneficiaries in the deed of trust, and who, by satisfying the liability of Poore to his wards, has become solely interested in the foreclosure of the deed, to account for the rents and profits of the lands claimed by the appellee, through a period of years, prior and subsequent to the law-day of the deed of trust, and for waste charged to have been committed upon them; second, to account for such of the personal property conveyed by the deed of trust, as he had received and converted; third, to account for all payments which, from a sale of other property, had been applied to the satisfaction of the decree against him as surety; fourth, to account for rents and profits of lands of Poore, not conveyed by the deed of trust, while such lands had been in his possession.

The first claim is founded upon the general proposition, that a mortgagee, taking possession before foreclosure, becomes the bailiff, or steward, or trustee of the rents and profits, for the mortgagor and his assigns, and, on a bill to redeem, must account for, and apply them to the satisfaction of the mortgage debt (2 Dan. Ch. Pr. 1237; 2 Jones on Mort. §§ 1114–20); and he may be made accountable for waste wantonly committed, or suffered in consequence of his gross negligence, while possession remained with him.—2 Jones on Mort. § 1123. These are liabilities resting on the mortgagee, when in that capacity and right he takes possession, recognizing the mortgage as the source of his title, and not disclaiming all privity of estate between him and the mortgagor, or the assignee who may have succeeded to his estate. If the entry is not as mortgagee—if it is not in recognition, or subordination to the mortgage—if it is in another capacity, other liabilities may be incurred, for which the law provides appropriate remedies. As the tenant of the mortgagor, or of his assigns, before or after the law-day of the mortgage, he may enter, subjecting himself to a liability for the rent stipulated, or for the value of the use and occupation, and for waste, if he commits it, or, from the want of reasonable care and diligence, suffers it. This liability

[Daniel v. Coker.]

results from the tenancy, and not from the privity of estate of mortgagor and mortgagee. It springs from the relation of landlord and tenant the parties have voluntarily formed. It may be, if the mortgagee was insolvent, or if there was some other fact or circumstance intervening, which would induce a court of equity to apply a set-off, that on a bill to foreclose, or on a bill to redeem, the liability would be set off against the mortgage debt.

Before the law-day of the mortgage, while the possession remains rightfully with the mortgagor, by the express reservation, or the necessary implication found in the terms of the mortgage, the mortgagee may as a trespasser intrude upon the possession—may enter and dispossess the mortgagor, or his assigns, deprive them of the rents and profits, and commit or suffer waste to be committed on the premises. The liability then incurred is that of a trespasser : he is not in possession as mortgagee,—as the bailiff, steward, or trustee of the mortgagor, or of his assigns, but as a mere trespasser. As a mortgagee in possession, as the trustee of the mortgagor, he would be responsible only for rents actually received, in the absence of fraud or willful neglect, and only for waste wantonly committed, or fraudulently or negligently. As a wrong-doer, he is liable for all the damages which are the proximate result of his tortious entry and possession, whether he have profited by it, or could have profited by it, or not. It is not for such damages a court of equity can require him to account, in a suit for foreclosure or for redemption, applying them to a reduction of the mortgage debt. If the mortgagor, or his assignee, should sue at law, and recover such damages of him, a court of equity would not, at his instance, relieve him against the judgment, and apply it to the payment of the mortgage debt; nor would the court enjoin the suit before judgment, because of the relation of mortgagor and mortgagee, and the fact that the mortgage debt was unpaid.—*Harrison v. McCrary*, 37 Ala. 687. It is only when the mortgagee is in possession *as* mortgagee, taking the rents and profits, that he may be required to account for them, or for waste, on a bill to redeem or to foreclose. A court of equity can not, in either suit,—and these are the only suits which can be maintained between them,—call the mortgagee to account for trespasses he may have committed, or because of his possession as the tenant of the mortgagor.— *White v. Williams*, 2 Green's Ch. 376; *Onderdonk v. Gray*, 4 C. E. Greene, 65.

It is obvious from the averments of the bill, and certain from the evidence, that the appellant did not enter or hold possession as mortgagee. The entry and possession was a mere trespass upon the appellee, who was in possession as the alienee of the

[Daniel v. Coker.]

mortgagor. We may pass over the fact that the deed does not confer on the appellant, and the other beneficiaries, a right in any event to enter and take possession. The right is conferred only on the trustee, Whitlock, and could not accrue until the wards had arrived at full age, and the liability of the sureties, for the default of the mortgagor as guardian, had been fixed. Neither of these events occurred, until long after the appellant entered into possession, and committed or suffered the waste imputed to him. The entry and possession was not in subordination to the mortgage, or in consequence of rights claimed to be derived from it. It was, most probably, as tenant or agent of the mortgagor, who disputed the fairness and validity of the conveyance under which the appellee deduced title to the premises; and it was while the appellee was in possession under that conveyance, entitled to the possession, and to hold it as the mortgagor would have held it, if the conveyance be valid, until the expiration of the law-day of the mortgage. The liability resting upon the appellant, if there be a liability, for which the appellee claims an account, is for a trespass committed upon his possession. It is not the liability of a mortgagee for rents and profits realized, or which could have been realized, without fraud or negligence, while as mortgagee, and while privity of estate was continuing between him and the mortgagor or his assigns, he had rightful possession. A court of equity is not the jurisdiction in which to recover damages for trespasses.

There is no evidence showing that the appellant had received and converted any of the personal property conveyed by the deed of trust. Whatever of payments have been made on the decree in favor of the wards, were properly applied, as was apparent from the records of the Court of Chancery, when this bill was filed. If Daniel had possession of other lands of the mortgagor, Poore, than were embraced in the deed of trust, there is no liability resting upon him to account to the appellee for the rents and profits of them.—*Coker v. Shropshire,* 59 Ala. 542.

The decree of the chancellor must be reversed, and a decree here rendered, discharging the injunction, and dismissing the bill, at the costs of the appellee, in this court, and in the Court of Chancery.