CHRISTOPHER A. HALL *et ux. vs.* CHARLES R. WESTCOTT *et als.*

Objections to the report of a master in chancery, because he has drawn wrong conclusions, should be taken by exceptions.

Objections to the report because he has proceeded irregularly or improperly, as by neglect to give notice or refusal to hear testimony, may be taken by petition to set aside the report, or to recommit it.

A mortgagee cannot hold the mortgaged estate under a tax title as against his comortgagees and the mortgagor; but in taking an account of the amounts to be charged against a mortgagee in possession, the fact that he has purchased at a sale for taxes, and claims thereafter to have entered under this tax title, and to have held solely under such title, cannot be ignored by the master. The accountability of a mortgagee, as such, when he enters under an independent title, depends not on the validity of such title, but on his reasonable and honest claim of right under it.

When an accounting party files an account, made up after the lapse of years, and from

memory, and the master finds it quite incorrect, the master will himself compute an account from the evidence.

When an accounting mortgagee respondent has paid money in good faith, to protect an independent title which he supposed himself to have, or to protect the title of his co-mortgagees, he should be allowed the amount in accounting.

BILL IN EQUITY to redeem a mortgage, for an injunction and for an account. On exceptions to the master's report.

*October* 5, 1891. STINESS, J. This case comes before us on the respondent's objections to the master's report, and also on his petition to set aside the report because it does not conform to the directions of the decree. At the outset he raises the question whether the correct course is to proceed by petition or exceptions. Although there is some diversity of practice in different courts, which it is hardly worth while here to consider, we think the following rule will be found convenient, simple, and reasonable : Where a party alleges wrong conclusions by the master upon the matters referred to him, the proper course is by exception to the report. But where the master proceeds irregularly or improperly, as by failing to give notice of hearings or to consider some matter referred to him, or by refusal to hear testimony or to give opportunity for its production, the remedy may be by petition to set aside the report or to recommit it. *Tyler* v. *Simmons*, 6 Paige, 127 ; *Douglas* v. *Merceles*, 24 N. J. Eq. 25 ; *Emerson* v. *Atwater*, 12 Mich. 314.

In the present case, we think the questions raised may properly be considered as exceptions. No misconduct is alleged, but objections to the report are based upon the master's findings upon the matters referred to him.

The most important objection involves the measure of accountability of the respondent. It appears that August 14, 1875, the respondent took a transfer of the mortgage sought to be redeemed, from Hiram C. Pierce, giving at the same time a declaration that he held one half thereof to the use of the complainant, and the other half as security for a debt due from Pierce to him. July 24, 1877, he also acquired title to the same premises under a sale for taxes. In this same case, *Hall* v. *Westcott*, 15 R. I. 373, this court decided that a mortgagee cannot hold the mortgaged estate under a tax title, as against the mortgagor or other mortgagees, since he is presumed to have purchased for the common protection

of all interested in the estate. The respondent claims that he entered into possession of the premises under this tax title August 1, 1877, and only under such title. But the master, relying upon the previous decision, apparently disregarded all claim of possession under the tax title, and therefore charged him as mortgagee in possession. While it is entirely true that a mortgagee cannot oust other mortgagees of their interest in lands by purchasing a tax title, it does not follow that the fact of such purchase is to be disregarded in charging him upon an account. In *Parkinson* v. *Hanbury*, L. R. 2 H. L. 1, it was claimed that a sale, under which mortgagees claimed title, having been decreed to be invalid, there was no other title on which the defendants could possibly be in possession, except that of mortgagees, and therefore their possession must be referred to their title as mortgagees, and to no other. But Lord Chelmsford said it was clear this position could not be maintained. He added : " It is certainly too much to force upon persons the character of mortgagees in possession, when they never were in actual possession as such, and never received any rents, except when they had by subsequent arrangement become entitled, as they believed, as purchasers, to the actual possession, or to the actual receipt of rents and profits then accruing." Lord Westbury said : " It is undoubtedly settled in courts of equity that if a mortgagee, in that character, receives rents and profits, he will be bound to account, not only for what he has received, but for what without wilful default he might have received, upon the ground that he is to be regarded as bailiff of the mortgagor or his representatives ; but if a mortgagee takes in another character, more especially if he receives in a character adverse to the rights of the mortgagor, then it would be impossible to ascribe to him, by any inference of law, the conclusion that he intended to take possession or to receive the rents as the bailiff of the mortgagor, or that that relation could properly be imputed to him." In *Daniel* v. *Coker*, 70 Ala. 260, it was held that the liability of a mortgagee for rents and profits could only attach when he entered as such. If he entered as a trespasser, or as a tenant of the mortgagor, whatever liabilities he may thereby incur, they cannot be enforced in equity, under a bill for an account and redemption. See, also, *Gaskell* v. *Viquesney*, 122 Ind. 244 ; *Young* v. *Omohun-*

*dro,* 16 Atlantic Reporter, 120. The accountability, therefore, of a mortgagee who enters under an independent title does not depend upon the validity of such title, but upon the fact of a reasonable and honest claim of right thereunder. The reason for this is obvious. If one takes possession as mortgagee, he is presumed to know that he is bound to apply the rents and profits in reduction of the mortgage debt, and upon redemption to account for them. He will therefore use greater caution in the management of the estate than he might use if he supposed himself to be the owner. He will be more likely to keep accurate accounts, and to be diligent in collecting rents, which as owner he might allow to run, possibly to ultimate loss. As the rule charging a mortgagee is an equitable one, it should be equitably applied by requiring reasonable knowledge of the liability to account. As we understand the report, the master did not find that the respondent did not enter under his tax title, but he disregarded such claim of entry altogether, upon the ground that the title itself was invalid as against the complainant. In our opinion this was erroneous.

Another ground of exception arises out of these facts. Pierce, who owned an estate on Eiswald Street, was indebted to the respondent on a note of $1,100, and gave him a lease of said estate, the rental value of which, when fully rented, was $100 per month, for eleven months, from March 1, 1875, as collateral security for the note. It does not appear very clearly how this security was to be worked out, since the lessee covenanted to pay $1,100 at the end of the term. But probably this meant a surrender of the note at that time, which it was supposed would then be paid by the rent received. This was the debt for which the mortgage was transferred, as additional security, August 14, 1875. For several months Pierce collected the rents and did not pay them over to Westcott. The master has charged Westcott with the full rent of $100 per month for those months, upon the ground that Pierce was acting as Westcott's agent during that time. As the decree directed the master to inquire what amount was due to Westcott from Pierce on account of the debt for which he held the mortgage as security, it became important to find what Westcott received from the premises leased on account of the debt. The respondent objects to the charge of more than he actually received. Assum-

ing that Westcott was to collect the rents during the lease, he was nevertheless to account to Pierce for the sum of $1,100, at the expiration of the term, either in cash or in the surrender of the note. If he paid the full sum in cash, the covenant would be satisfied, but the debt would still remain. If he paid or allowed Pierce to receive a part in cash, the satisfaction of the covenant and the reduction of the debt would be effected *pro tanto*. It was indeed a peculiar arrangement, but it must be taken as the parties made it. Under the arrangement as made, we do not see how Westcott's debt can be reduced by what Pierce collected, even if the latter was the agent of the former in the matter of collection. If Westcott did not receive the rent for several months, his debt was not thereby reduced. The agency did not alter the indebtedness, as between themselves, however good it may have been in regard to parties who made the payments. The answer alleges that it was agreed that Westcott should receive the rents and apply them to the payment of the note. But the parties who made this agreement were competent to vary it, and such variation could not affect this case, because Pierce's collections all occurred before the assignment to Westcott of the mortgage sought to be redeemed. Up to August 14, 1875, it was simply a matter between Pierce and Westcott. We think, therefore, that the charges of rent received by Pierce prior to August 14, 1875, were erroneous. The lease expired January 31, 1876, and the answer avers that the respondent collected some rents up to March 25, 1876, when the property passed from Pierce's hands and the respondent was forced to abandon them. The master has charged him with rent to January 22, 1877, to which exception is taken. As we do not see, from the pleadings or the report, upon what ground this charge is made, it appears to be erroneous.

Objection is also made that the master has made up the account upon conjecture, disallowing the account filed by the respondent. The report states that the respondent's account was made up from memory only, after the lapse of several years, and that he disallowed it because it appeared to be wholly incorrect. Under such circumstances, all a master can do is to make a computation himself, based upon the evidence. The objection to the report on this ground is therefore untenable.

Another objection is the disallowance of $100 costs, paid in the foreclosure suit of a mortgage prior to the one in question. If the money was paid in good faith, to protect the title which the respondent then supposed he had under the tax deed, or to protect the title of his comortgagees from an adverse claimant, it would be proper to allow it in his account. If, however, the proceeding was unnecessary, or was procured by him in order to avail himself of a title under that of the complainants, for whom he was trustee, it should not be allowed. We are unable to say from the report how this was. But as it will be necessary to revise the report, upon the grounds already stated, we leave this matter to be passed upon by the master, as he may find the fact.

*Exception sustained, and report recommitted to the master.*

*Edward D. Bassett,* for complainants.

*George B. Barrows,* for respondent.