# Bickerton v. Guttery.

*Bill in Equity to Foreclose Mortgage.*

1. *Mortgagee; when chargeable with rents.*—The mortgagee of land is not chargeable with rents and profits until he takes possession of the land under and by virtue of the mortgage.

[Bickerton v. Guttery.]

Appeal from Walker Chancery Court.

Heard before Hon. Thomas Cobbs.

Bill in equity by V. L. Guttery against John W. Bickerton and S. N. Morris to foreclose a mortgage executed by Bickerton to Morris, and by said Morris transferred to the complainant. There was decree *pro confesso* against Morris. Bickerton defended, and in his answer set up that Morris, while owner of the mortgage, took possession as mortgagee of the land therein embraced, and that the rents and profits therefrom were, or should have been if collected by due diligence, more than sufficient to pay the mortgage debt, and further that Morris agreed when he took possession to look to the rents to accrue from the land for the balance due him on the mortgage debt. The answer further alleged that the possession of Morris began in 1895 and extended through that year and the year 1896, and that the land was sold in January, 1896, under a decree of the chancery court in a certain proceeding against the respondent by one Stovall and that at such sale made by the register, Morris became the purchaser and received the register's deed; that afterwards the respondent redeemed the land from Morris by paying him the sum required for such redemption, and received possession from Morris, but that Morris refused to execute to him a deed. The answer was made a cross-bill with prayer that Morris be required to execute deed to respondent or that all title to the land be by decree of the court divested out of Morris and invested in respondent. Morris answered the cross-bill, denying the allegation as to his taking possession as mortgagee, and averring that he did not go into possession until his purchase at the register's sale, and that he acquired possession as such purchaser and was thereafter entitled to the rents. On the hearing the chancellor rendered a decree for complainants, from which this appeal was taken.

J. H. McGuire, for appellant.—a mortgagee in possession is a trustee of the rents and profits, and is liable not only for such as he receives, but for such as he fails to collect through gross negligence or willful default. *Butts v. Browton,* 72 Ala. 294; *Tanner v. Wilkinson,* 72

[Bickerton v. Guttery.]

Ala. 361. (2). Attorney's fees not provided for in the mortgage should not have been allowed.—*Bynum v. Frederick*, 81 Ala. 489; *Thomas v. Jones*, 84 Ala. 304; *McCall v. A. F. L. M. Co.*, 99 Ala. 427; *Tompkins v. Drennen*, 95 Ala. 463.

COLEMAN & BANKHEAD, *contra.*—Morris could only be chargeable with rents in the event he held possession as mortgagee.—*Daniel v. Coker*, 70 Ala. 260; *White v. Williams*, 2 Green's Ch., 376; *Gresham v. Ware*, 179 Ala. 192.

HARALSON, J.—A liability on Morris for rents and profits, could attach only in the event he entered as mortgagee in recognition of the mortgage, and the question raised by the record is, whether or not the evidence sustains the findings of the chancellor and register, that Morris was not in possession of the lands as mortgagee in the year 1895. If he was, he is liable for the reasonable rents for that year; if not, the defense set up fails. *Daniel v. Coker*, 70 Ala. 260; *Keith v. McLaughlin*, 114 Ala. 60.

The evidence shows without any conflict, that neither Morris nor defendant collected any rents for the year 1895, and that the mortgage debt has not been paid. The appellant's contention is, that Morris, as mortgagee, had possession of the lands in the year 1895, and but for his willful negligence, or want of due diligence, he could have collected rents sufficient to pay the mortgage debt; and further, that when he took possession, as mortgagee, he agreed to look to rents for the balance remaining due on the mortgage.

The Bickertons,—the defendant, his daughter and sister-in-law,—each deposed that Morris was put in the possession of said farm in the year 1895, but it is evident, that neither of them ever saw him on the place. Their evidence in this respect is more of a conclusion from circumstances than from knowledge of facts. Morris swears he never agreed to take, and in fact never did assume possession or control of the place, before about the 1st of February, 1896, after his purchase of the lands at said register's sale.

S. N. Nelson testified that he rented the place for the year 1895 from defendant and obtained possession of it from him; that afterwards he, Nelson, rented 12 acres of it to George Burkett, and the balance of it to R. A. Baker, and they farmed the place for the year 1895; that he delivered the premises to Baker in April, 1895, under an agreement with him that he was to protect him, Nelson, from payment of rents, and pay the same to defendant or to Morris. He further testified, that his agreement, with defendant, when he rented from him was, to make the rent note payable to him, or to Morris, if the latter would accept the note, and that Morris would not accept the note without security, which witness never gave.

Said Baker, examined for defendant, who lived on, and cultivated most of the place in 1895, says he never saw Morris on the place that year, except passing the public road. The evidence is entirely wanting to show that Morris ever had actual possession of the premises, before 1st February, 1896, at the time he purchased it under the decree of the chancery court, unless it shows, that Baker was in possession as his tenant. Baker testified as to that matter, that he went to see defendant at his home, to rent the land for 1895, and he was informed by him that there were two men ahead of him,—Nelson and Aiken,—and if neither of them took the land, he could have it, if he could fix up the rent for it with Mr. Morris; that Aiken did not take the land, but Nelson moved on it. This statement tends to show, especially in connection with the other corroborating evidence, that defendant had rented the land to Nelson for the year 1895. He further stated, that he went right away and saw Morris, with whom he entered into an agreement, that he was to rent the place for the year at $100, and was to give him his note with Nelson on it as security for that amount, but he added, that he never afterwards offered Morris the note, nor did Morris ask him for it. He further stated, that he first agreed with Nelson that they would divide the place, but afterwards, Nelson moved off and he moved in. He also testified, that one Burkett had rented a part of the land from Nelson, before he left, and he remained and cultivated it during the year.

[Bickerton v. Guttery.]

But, as opposed to Baker's evidence, Morris swore that he never rented him the place; that Baker came to him in the spring of 1895, and desired to rent it, and he told him he had nothing to do with it, but that he understood Mr. Bickerton had rented it to Nelson, and he could go and see Bickerton about it. Mrs. M. E. Nelson testified that Baker rented and got possession from Nelson. This statement she made of her knowledge, for she was present and heard the contract made. B. N. Guttery also swore, that in the spring of 1895, he heard a conversation between Baker and Morris touching the rent of this farm; that Baker came to Morris and desired to rent it from him, and Morris informed him he had nothing to do with it, that he thought Sam Nelson had rented it, but could ascertain for certain by going to see Mr. Bickerton; that Baker left, and returned in the evening and told Morris that he had been to see Bickerton, who informed him that he had rented it to Nelson, and if he desired to rent he would have to go and see Nelson. The preponderance of the evidence is too great against the evidence of Baker that he rented the farm from Morris, to credit it. He was in error certainly in making the statement.

Here we might dismiss further consideration of the cause, since the whole defense proceeds on the averments that Morris, as mortgagee, took possession of the premises in 1895, and had the use thereof and received its rents, and that he agreed when he took charge of the farm in 1895, that he would look to the rents for the balance due him on said mortgage debt. We have seen that Morris never was in possession of the premises, either by himself or tenants. But, as touching that agreement, the defendant testified that he and his wife agreed to turn the land over to Morris and he agreed to collect the rents for 1895 and apply them to the payment of the mortgage debt, and if the rents overpaid the debt, the balance was to be returned to them, and in any event, he stated that he would take the rent for 1895 in full payment for the balance due him on his mortgage. Mary Bickerton testified that Morris said, at the time the agreement was entered into, that "he would take charge of the farm, and the rents for the year, 1895, he would

apply to the balance of the mortgage debt," and Kate
Bickerton deposed, that she heard Morris agree to take
possession of the farm in 1895, and he agreed to take the
rents of the farm for the year 1895, for the balance of
the mortgage debt, and said that he had done so. The
evidence of the first and last witness is different from
that of the other witness, Mary Bickerton. The wit-
nesses are not quite agreed, nor does the evidence of
Mary quite support the averments of the answer and
cross-bill. On the contrary, Morris swears most posi-
tively, that he entered into no such contract. The evi-
dence also shows, as we have seen, that defendant had
already rented the farm to Nelson, who was in posses-
sion of it under his contract of renting, at the time de-
fendant alleges he entered into said contract with Mor-
ris, who could not have taken possession of the land
without a surrender of it from Nelson. Furthermore,
one can see why Morris was willing to aid defendant in
collecting his rents for that year, consistent with the
true theory of the case, but it is difficult to understand,
on what business principles he would have entered into
any such an agreement as the one alleged. His debt was
amply secured by the mortgage, and was bearing inter-
est. According to the alleged agreement, he relinquished
a certain for an uncertain security, by giving up the land
itself as security, and looking to an uncertain crop on it
to pay his debt. Unpropitious seasons, sickness, pov-
erty or unfaithfulness of tenants might have defeated his
realizing anything. Still more, it would seem, that if
the contention of defendant were true, Morris would
have surrendered the note and mortgage; but instead, he
held on to them as evidence of the debt that was due him.

The only ground of objection to the allowance of the
attorney's fee, either in the answer or exception to the
report of the register, was that the mortgage debt had
been fully paid.

The decree of the chancery court must be affirmed.

Affirmed.