# Wytheville.

## BELL AND WIFE V. McCONKEY AND ALS.

### JULY 1st, 1886.

1. PRINCIPAL AND SURETY—*General Rule.*—The principal debtor's land should be first subjected to the exoneration of the land of the sureties. *Horton* v. *Bond,* 28 Gratt. 825.
2. IDEM.—*Exception.*—But this rule will not be carried to the extent of delaying the creditor indefinitely.
3. IDEM—*Case at bar.*—Where fifteen years delay has resulted in the payment of only a part of the creditor's debt, and has developed the fact that the lands of the principal are so encumbered by prior liens, as to leave no hope of any relief in that quarter, and the personal fund dedicated by the will of the surety proves insufficient for the payment of the debts, and effects to realize from the out-lands directed by the will to be sold for that purpose, have proved abortive, it is proper to decree that, unless the devisees of the surety do, within a prescribed time, contribute their ratable proportions to pay the creditor's debt, then the lands devised to each of said devisees, shall be subjected to the payment of said proportions.

Appeal from decree of circuit court of Montgomery county, entered 5th December, 1882, in the chancery cause wherein S. A. McConkey, the personal representatives of J. McG. Kent, J. A. Langhorn, and others, are complainants, and F. Bell and wife, and others, are defendants, and in the cross-bill of John T. Cowan and wife, complainants, and said F. Bell and wife and other devisees of James R. Kent, deceased, defendants.

This suit was brought to subject the lands of said James R. Kent, in the hands of his devisees, to the payment of certain judgments against one W. H. Peck, as principal, and said Kent

as surety. The circuit court decreed that unless within ninety days each of the said devisees should contribute his or her ratable proportion, which had been ascertained, to pay off the said judgments, the lands devised to them, respectively, should be rented out for the purpose of raising such proportion.

From this decree, the said F. Bell and wife and Cynthia Bell, obtained an appeal and writ of *supersedeas* from one of the judges of this court.

Opinion states the case.

*Isaac Hudson* and *I. H. Larew*, for the appellants.

1. The debts of McConkey and Langhorn are debts upon which Wm. H. Peck is principal, and J. R. Kent surety. This fact was disclosed in the record as early as March 8, 1870, in the answers to original bill. It should have appeared affirmatively that the estate of Peck, the principal, was exhausted before decreeing against the lands of which J. R. Kent, surety, died seized. *Horton* v. *Bond,* 28 Gratt. 815; *Ewing* v. *Ferguson,* 33 Gratt. 548. 2. The creditors, in seeking satisfaction of their debts, were bound to exhaust the property set apart by the testator for payment of debts before subjecting other estate of the testator specially devised. *Patton* v. *Williams,* 3 Mun. 59. 3. And to do so subject to equities created by the decedent, not fraudulent; they have no specific lien, but simply a general right which is subject to these equities. *McCandlish* v. *Keen,* 13 Gratt. 614. 4. Equities created by heirs and devisees are in like manner to be respected by creditors. *Easly* v. *Barksdale,* 75 Va. 274. 5. Personal estate of a decedent is the primary fund for the payment of his debts, and should be first subjected. 2 Lom. Ex'rs, pages 219–20; 1 Story's Eq., sections 571–3; 12 Sim. & Stu. 298; *Elliott* v. *Carter,* 9 Gratt. 541; 2 L. C. in Equity, 251, 258, 510; 3 Williams' Ex'rs, bot.

p. 1693–4; *Edmunds* v. *Scott*, 78 Va. 720.   6. This rule is not changed by Code 1873, page 942, section 3, enacted after 3d and 4th William IV, chapter 104.   The sole object of this act was to put specialty and simple contract creditors on the same footing and dispense with the necessity for marshalling assets. January Report of Revisors, 1849, page 675; *Mirehouse* v. *Scaife,* 2 Mylne & Craig, 690, 709.   7. The Court of Appeals has repeatedly held since the statute, making real estate of a decedent assets for the payment of his debts (Code 1873, page 942, section 3,) went into effect July, 1850, that personal estate is the primary fund for payment of debts.   *Lewis* v. *Overby*, 31 Gratt. 601; *Ryan* v. *McLeod*, 32 Gratt. 375; *Duerson* v. *Alsop*, 27 Gratt. 236–7; *Edmunds* v. *Scott*, *supra*.   8. The assent of personal representative is necessary that a legacy may vest. He has full control, and is responsible if he delivers the legacy without taking a refunding bond.   2 Lom. Ex'rs, 230–1; 2 Williams' Ex'rs, bot. p. 932–3; *Lewis* v. *Overby, supra; Edmunds* v. *Scott, supra.*   9. The legacy of Miss E. C. Kent and Mrs. Cowan, under the fifth clause of testator's will, is a general legacy which should have been applied to testator's debts in exoneration of specific devises to appellants.   *Rogers* v. *Rogers*, 20 Am. Decisions, 716; *Chase* v. *Lockerman*, 35 Am. Decisions, 277; 2 Williams' Ex'rs, bot. page 1172–3; 10 Jacob's Fisher's Dig., col. 17080.   10. This would be true even if the bequest to Miss E. C. Kent and Mrs. Cowan was a specific, and not general, as it is.   *Elliott* v. *Carter*, 9 Gratt. 541; *Edmunds* v. *Scott, supra;* 2 Lom. Ex'rs, 126.   11. Female appellants are, by virtue of their elections, to take under the will, purchasers for valuable considerations of the lands devised to them, and as such entitled to claim exoneration at the expense of the residue of testator's estate not disposed of.   2 Williams' Ex'ors, bot. page 1364–5; *Heath* v. *Denby*, 1 Russ. 543; *Blower* v. *Merritt*, 2 Vesy Sr. 420; 1 Lom. Dig. 348, section 13; 2 Lom.

Ex'rs, 219; 2 L. C. in Equity, 511.    12. In reference to legacy of female appellants under the will of Gordon Cloyd, the court erred in overruling the exceptions to Commissioner Wade's report of April, 1881.    *Coles* v. *Ballard,* 78 Va. 139; *Updike* v. *Lane,* 7,8 Va. 132; *Nelson* v. *Carrington,* 4 Mun. 332, 343.

*W. R. Staples, G. G. Junkin, T. E. Sullivan,* and *A. A. Phlegar,* for the appellees.

LACY, J., delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Montgomery county, rendered on the 5th day of December, 1882.

The suit is by judgment creditors of Jas. R. Kent, deceased, and of William H. Peck, against the executors of the said Jas. R. Kent, deceased, and their securities as such, the devisees of said Kent, the said Wm. H. Peck, then a bankrupt, and his assignees, Romeo H. Freer and Joseph Shields, to settle up the estate of the said Kent, and subject his lands in the hands of his devisees to the satisfaction of the said judgments.

The suit was brought in 1869, and the judgments amounted to $13,440, of principal; James R. Kent having died in 1867, leaving a large estate, the lands alone being valued at over $100,000.    And these judgments appear to have represented his chief indebtedness.

By will the said James R. Kent divided his estate among his children, and appointing two of his sons-in-law and one of his daughters his executors and executrix of his said will, directed debts due to him to be collected and his debts paid; and if that fund should prove unavailing and insufficient, then certain out-lands, as they are termed, were devised by him specially, to be sold for that purpose.

Upon the maturing of the suit, decrees for account were rendered, and testimony was taken, and the lands valued, and the debts collected, and the greater part of the out-lands were sold; and it appearing that the lands of the co-obligor, Peck, were largely encumbered by prior judgments, and the executors and the executrix named in the will having resigned their trust, and an administrator, with the will annexed, having been appointed, and it being apparent that nothing had been or could be realized from the judgments against Peck to pay these judgments—a large part of the judgments of the complainant being still unpaid—on the 5th of December, 1882, fifteen years after the death of the testator, the court being of opinion that the creditors had been delayed long enough in the collection of the debts established by them, and the lands of the testator having been, during all these years, enjoyed by the devisees of the testator, the court, by decree that day rendered, apportioned the debts between the several devisees according to the value of the lands held by them; and it further appearing that the lands of the testator would pay the debts in five years, and that the said devisees should contribute *pro rata* to the payment of said unpaid liabilities, decreed against the said devisees accordingly their *pro rata* share of the said unpaid liabilities. And it was further decreed that upon the failure of the said devisees, for ninety days after the said decree, to pay off and discharge the said decree as to each, then receivers, appointed by the said decree, were directed to rent out the land of each devisee so failing to discharge the decree as to him, in order to an enforcement of the said decree. From this decree an appeal was sought and obtained from this court.

The assignments of error on appeal here are, that it was error to decree against the lands until the personal estate had been exhausted; that the land dedicated to the payment of the

debts by the will should be first subjected; that the same debt had been proved against Peck's estate, who is claimed to be the principal in the debts sought to be charged on the land of the testator; and setting up a claim on the part of some of the devisees to a charge against the estate of the testator for a legacy from their grandfather, which went into his hands.

Conceding the legal propositions contended for by the appellants, the decree of the court below appears to be plainly right. When all the parties are before it, as between principal and surety, a court of equity will "put the saddle on the right horse in the first instance."

It is true that the sureties and principal are all bound by the complainant's judgment, and he has the undoubted right to resort for satisfaction to the property of each and all of them; yet, in equity, in a suit in which all the parties are alive, and before the court, the court will respect the equities of the parties *inter sese*, and administer them upon the principles peculiar to the forum, *as far as that can be done without too great delay and without prejudice to the rights of the creditor*. The principal debtor's land should be first subjected to the exoneration of the lands of the sureties. *Horton* v. *Bond*, 28 Gratt. 825, and cases there cited. *Penn* v. *Ingles*, 82 Va.; *Muse* v. *Friedenwald*, 77 Va. 57. But this principal will not be carried to the extent of delaying the creditor indefinitely in the collection of his debt. In this case, fifteen years delay have resulted in the payment of only a part of the creditor's debt, and has developed the fact that the lands of the alleged principal are so encumbered by prior liens as to leave no hope of any relief being found in that quarter; and the personal fund dedicated by the will proving insufficient for the payment of the debts, and many years having elapsed in a vain effort to realize enough on the outlands for the payment of the debts, and that source appearing to be wholly insufficient in any event, the decree of the cir-

cuit court appears to be plainly right. The devisees are entitled to hold the lands devised to them, only subject to the debts of their ancestor, and in this case they received the lands with the lien of the judgment already attached.

It is universally conceded that the burden is on him who would confine a creditor to a particular fund, or remedy, to show that *it affords a sure, prompt,* and *adequate means of payment. Wright* v. *Simpson,* 6 Vesey, 714; *Woodcocke* v. *Hart,* 1 Paige, 185; *Aldrich* v. *Cooper,* 2 Lead. Cas. in Eq., Pt. I, 228.

In this case it does not appear that there is any reason to farther delay the creditors in the collection of their debts, in order to pursue a fund which at last can avail them nothing.

As to the claim set up many years after the death of their father, that at some period during his lifetime he received a legacy for some of his children from their grandfather, Gordon Cloyd, the commissioner reported, and the court held, this to be a stale demand, and in this view we concur.

Upon the whole case, we are of opinion to affirm the decree of the circuit court.

DECREE AFFIRMED.