# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## MAX MEADOWS LAND AND IMPROVEMENT CO. AND OTHERS V. McGAVOCK AND OTHERS.

### JUNE 23, 1898.

#### Absent, Harrison, J.

1. DECEDENT'S ESTATE—*Debts of Ancestors—Judgments against Heirs.*—The debts of the ancestor must be first paid out of his estate before the judgment creditor of the heir can get any portion of the proceeds of the land descended. The heir is only entitled to the residue of the estate after the payment of the debts of the ancestor.

2. CHANCERY PRACTICE—*Suit to Enforce Vendor's Lien on Land which has been Partitioned—Apportionment of Debt amongst Heirs.*—In a suit to enforce a vendor's lien reserved on land which has been partitioned amongst the heirs of the vendee, it is not error to apportion the lien ratably amongst such heirs, and decree a sale of their respective shares, where it appears that the share of each heir is amply good for his proportion of the lien, and the creditor is amply protected by other reservations in the decree in his favor, and is not unreasonably delayed in the collection of his debt.

3. CHANCERY PRACTICE—*Suit to Enforce Lien of a Deed of Trust—Prior Unmatured Deed of Trust—Postponement of Decree for Sale.*—In a suit to enforce a deed of trust given to secure the purchase price of a lot which is a parcel of a large tract of land, upon which tract there is a prior unmatured deed of trust for a large sum, the payment of which has been assumed by the vendor of the lot, it is not error to refuse a decree for the sale of the lot until the prior deed of trust has been satisfied, or until the amount realized from the sale of the lot can be applied towards the discharge of the prior deed of trust.

4. CHANCERY PRACTICE—*Sale of Lands—Objections to Sale unsupported by Affidavits, or Upset Bid.*—In a suit to subject lands of several debtors to the payment of the liens thereon, where it appears that an effort has been made, by offering the lands of the several debtors as a whole and in parcels, so to sell the lands as to obtain the best price therefor, and the

sales have been made, and some of the lands have been resold on upset bids, an objection to the sale, unsupported by an upset bid, or a well founded assurance that a greater price would be obtained if the lands were offered in some other way, should be overruled.

Appeal from several decrees of the Circuit Court of Wythe county pronounced in several chancery suits heard together, in two of which appellants filed petitions.

*Affirmed.*

The opinion states the case.

*Bolling & Stanley*, for the appellants.

*Walker & Caldwell* and *J. H. Fulton*, for the appellees.

RIELY, J., delivered the opinion of the court.

Of the real estate of which Randal McGavock died seised and possessed, a part was purchased by him of John T. Sayers for the sum of $18,500, and the vendor's lien retained therefor. The balance due thereon is $5,000, with interest from January 1, 1894, and belongs to the appellant, R. M. Lawson.

Randal McGavock, on February 1, 1888, borrowed from A. M. and W. M. Fuller the sum of $20,000 for the period of ten years, and secured the same by deed of trust on his real estate, exclusive of the part purchased from Sayers. On March 6, 1890, he sold and conveyed a large part of the land subject to this incumbrance to the appellant, Max Meadows L. & I. Co., for the sum of $44,290, which, in part discharge of the purchase money, assumed payment of the debt to the Fullers. This debt was not due until February 1, 1898, and was unpaid at the time of the rendition of the decrees appealed from. The only other debt of Randal McGavock, so far as appears from the record, is the balance due on the vendor's lien belonging to Lawson.

Randal McGavock left four children, H. E. McGavock, J. R. McGavock, J. C. McGavock, Lucy McG. Kent, the wife of J. B. Kent, and two grandchildren, Eliza M. Crockett, the wife of A. G. Crockett, and Holcombe M. Robertson, the issue of a deceased daughter, who, as his heirs at law, inherited his estate. After his death the lands of which he died seised and possessed were, in great part, divided and allotted, in a suit brought for the purpose, to the said heirs.

The four children of the decedent became involved in debt, and specific and general liens were acquired by deeds of trust and judgments on their respective shares of the said real estate.

Suits were brought to enforce the liens, and the court, having ascertained the same and established the order of their priorities, decreed the lands to be sold to satisfy the liens. In the account of liens, the vendor's lien held by Lawson was given priority over the liens of the creditors of the children respectively, not only on the Sayers tract of land, but also on the other lands inherited from their father and allotted to them in the partition, which was wholly just and proper. The debt of the ancestor must be first paid out of his estate, and his heirs at law are only entitled to the residue of the estate after the payment of his debts.

The complaint of the appellant, Lawson, is that the court did not sell the Sayers land, on which he holds the vendor's lien, as *a whole*, for the payment of his lien, instead of apportioning the debt ratably among the heirs, and selling their respective shares of the lands of their ancestor as the same were allotted to them in the said partition.

The several suits for the sale of the lands of the children were heard together. From the sale of the lands of J. C. McGavock, J. R. McGavock, and Lucy McG. Kent, three-fifths of the debt of Lawson were decreed to be paid to him, one-fifth being paid from the lands of each of them as his proportionate part of the debt; and another one-fifth was ordered to

be paid him from the proceeds of sale of H. E. McGavock's land. For the remaining fifth, the entire shares of the two grandchildren, not only in the Sayers land, but also in the other lands of Randal McGavock, are liable; and the court gave Lawson leave to have them made defendants that he might have their shares of the land sold to pay the residue of his debt. It also reserved to him the right to resort to funds thereafter to come into the court's hands to make good any deficit in the payment of their one-fifth of the debt, which was not likely to happen, for the four-fifths of the Sayers' land already sold realized more than four-fifths of his debt, and even he impliedly admitted in his petition that the grandchildren were solvent. And besides, there remained to be sold a parcel of 262 acres of land, of which they were entitled to one fifth part, and which part he had also the right to have subjected to pay any deficit in the payment of their proportionate part of his debt.

It does not appear that Lawson has been in anywise prejudiced by having his debt apportioned among the several heirs of his debtor, and the respective shares of each of them in his lands subjected to the payment of his just proportion of the debt. It was eminently just that this should be done. Each heir should be allowed to save from sale, if possible, the land received by him in the partition, by paying his ratable share of the debt, if it can be done without injury to the creditor, or causing him unreasonable delay. The creditor will receive payment of his debt, and each heir may thus have the opportunity to retain as a home his part of the land, which he may have greatly improved since the partition.

The result may also often be to prevent a multiplicity of suits and circuity of action. The rule adopted in this case is that which was laid down in *Lewis* v. *Overby*, 31 Gratt. 601. It was conceded by the counsel for the appellants that this is the correct rule where a creditor seeks to subject the estate of a decedent to the payment of a debt for which he has no lien, but that it does

not prevail where he has a lien on the estate, or some part of it, for his debt.   In this they were mistaken.

In *Bell* v. *McConkey*, 82 Va. 176, which was a suit to subject, in the hands of his devisees, the lands of a decedent to the payment of judgments recovered against him in his life-time, the court apportioned the judgments among the several devisees according to the value of the lands devised to them respectively, and decreed that the land held by each devisee be rented out to pay his proportionate share of the said debts.   We know of no authority for the distinction claimed, and can see no good reason for it.

It is not perceived that any error was committed by the Circuit Court against the appellant.   The record shows that full provision was made for the payment of his debt, and that he has really nothing to complain of.

The appellant, Max Meadows L. & I. Co., assigned as error the failure to sell certain lots upon which it held specific liens. These lots had been sold and conveyed by it to certain of the said heirs, and deeds of trust taken to secure the unpaid purchase money.   The judgments reported in its favor were also for the same debts.   The lots were a part of the land upon which rested the prior lien for the large debt due to the Messrs. Fuller, and which the company had assumed to pay.   It would have been error to sell the lots to pay off the deeds of trust held by the company until it had lifted the lien to the Fullers, or until the amount realized from the sale of the lots could be applied towards its discharge.   Equity would have required this, and not allowed the amount to be paid over to the company while the Fuller lien still rested on the lots; but the amount could not be paid on the Fuller lien, for the reason that it was not yet payable, and they had given notice that they were unwilling for the deed of trust securing it to be foreclosed until the debt was payable.   The court did not err in postponing the sale of the said lots until the lien to the Fullers was lifted, or the proceeds of the sale of the lots, when sold, could be ap-

plied towards its discharge, and the purchasers of the lot get a title relieved of the Fuller lien.

The said appellant also assigned as error that the priorities of conflicting liens were not settled by the court before decreeing the sale of the lands which were sold. The appellant filed no exception to the report of liens by the commissioner, and does not complain of the order of priority assigned to its debts. Our examination of the record has failed to discover any failure to ascertain and settle the priorities of any conflicting claims, or that there is any just foundation for this assignment of error.

The principal complaint of the appellant company was that the lands were sold in small parcels, and not in the way most likely to realize the highest price. The lands, which were sold, were received by the heirs in the partition made before the liens of the company, specific or general, were obtained against them, or the debts were even incurred; and it appears from the record that the several parcels composing each share were first offered for sale separately and then as a whole, and the largest amount offered was reported to the court as the sale thereof. Upset-bids were put in for a part of the lands, and the same afterwards resold. So far as we can see from the record, the effort was made so to sell the lands as to realize the highest price. It was asserted by the appellants that if the lands had been sold in a larger body, or if certain shares or parts of shares had been sold together as one tract, a higher price would have been obtained. This view was urged upon the Circuit Court, as well as presented here. It was not, however, accompanied by an upset bid for the lands, or any of them, and was not even supported by affidavits or other foundation. The Circuit Court would not have been justified in setting aside the sales that had been made, and, by ordering a resale, in taking the risk of a less price being obtained, in the absence of an upset bid, or of a well founded assurance that a greater price would be obtained, if, indeed, the difficulty of

preserving or ascertaining the equities between the parties whose lands might be sold together, arising from the ineqality in the value of the lands and the right of contribution, was not an insuperable objection to such a course.

Other errors were assigned in the petition, but were not relied on at the hearing. They refer to matters of minor importance, were not well founded, and need not be discussed.

The decrees appealed from must be affirmed.

*Affirmed.*