## H. CLAY GATES v. BLIE ARMSTRONG.

Middle Section. February 20, 1926.

Certiorari denied by Supreme Court, June 19, 1926.

1. **Principal and surety. Under Negotiable Instruments Act a surety who signs as joint maker is liable to the payee as maker.**
   Under the Negotiable Instruments Act, sec. 3516a4, Shannon's Code, a joint maker of a note is primarily liable to the payee even though as between the signers he is a surety for the other signer.

2. **Principal and surety. Negotiable Instruments Act does not disturb equities between joint makers of a note as between themselves where one signs as surety.**
   The equities of a surety, as between himself and his principal may yet be considered because the real contract between the parties can be shown now as fully as it could have been shown before the passage of the Negotiable Instruments Act.

3. **Principal and surety. Where principal and surety have both mortgaged individual property for the debt of the principal, the surety is entitled to have the property of the principal sold first to satisfy the debt.**
   In an action to recover on two promissory notes and have deed of trusts securing the same foreclosed, where the makers of the note secured by first deed of trust both mortgaged their individual pieces of land, the one signing as surety of the other, and later the principal gave a note and second deed of trust on his property held that the surety was entitled to have a decree that the principal's land first be sold and if it did not satisfy the note that the surety's land might then be sold to pay the balance of the first note and under no consideration was the payee entitled to have the surety's land sold in order that he might recover on his second note and deed of trust.

Appeal from Chancery Court, Marshall County; Hon. Thos. B. Lytle, Chancellor.

Affirmed.

T. L. Coleman, of Lewisburg, for appellant.

R. C. Armstrong, of Lewisburg, for appellee.

DeWITT, J. This was a suit by the appellant, Gates, as the owner and holder of two notes, one secured by a first mortgage on land of

Armstrong and land of S. J. Ketchum, the other secured by second mortgage on the same land of Armstrong, to foreclose both mortgages. The first mortgage note was signed by Armstrong and Ketchum, the latter being in fact an accommodation maker; the second mortgage note was signed by Armstrong alone. The issues arise between the equities of Ketchum as surety for Armstrong and the rights and interests of Gates as a junior encumbrancer. The facts of the case are virtually undisputed.

The defendant, Blie Armstrong, on July 26, 1922, was in partnership with a minor son of the defendant, S. J. Ketchum, in a mercantile business. These merchants had borrowed $400 from the First National Bank of Lewisburg, when they started in business. Complainant, H. Clay Gates, and defendant, S. J. Ketchum, signed the note as joint makers but in fact they were accommodation makers. In July, 1922, the partnership had become indebted to merchants in the sum of $431.32. The partners, Armstrong and the younger Ketchum, set forth to complainant their financial difficulties. Defendant, Armstrong, also owed complainant two notes for $6 and $84 respectively. Complainant thereupon proposed to the partners that he would pay the $400 note held by the bank and the accounts amounting to $431.32, and cancel the two other notes if Armstrong and defendant, S. J. Ketchum, would execute a note to him for $1,050 and secure the same by each of them giving him a mortgage on his tract of land, Armstrong's land comprising 80 acres, and Ketchum's land, 52 acres. This proposition was accepted, and on July 6, 1922, S. J. Ketchum and his wife, and Blie Armstrong gave their note for $1,050, payable in twelve months to the order of H. Clay Gates, with interest and attorney's fee of 10 percent to be paid should it become necessary to sue or any legal proceedings should be instituted thereon, and they also executed a mortgage on the tracts of land held by them in severalty as aforesaid. This mortgage recited that there was a prior mortgage on the Armstrong tract of 80 acres to secure a note for $800 of Armstrong, held by a person named Hill. On December 8, 1922, Mr. Gates paid this $800, procured a release of the lien of the mortgage given to secure the same, and took another note from Armstrong alone for $925, and a second mortgage on said tract of 80 acres to secure the payment of said note. This sum of $925 included the amount of the $800 note and a commission to Mr. Gates for furnishing the money to pay the same. In May, 1924, the bill in this cause was filed by complainant, Gates, to obtain a decree against Armstrong and S. J. Ketchum on the $1,050 note and a decree against Armstrong on the $925 note; and also to foreclose both mortgages by sale of the two tracts of land and for the satisfaction of said notes respectively. Before the suit was instituted, S. J.

Ketchum had paid the sum of $400 on the first mortgage note for $1,050. The defendants do not deny their primary liability on said note, but S. J. Ketchum insists that as between himself and Armstrong, he stands in the relation of surety only and that the indebtedness of $1,050, for which the note was executed, was an indebtedness due from Armstrong and George Ketchum, defendant's minor son, that this fact was known to Gates, that defendant, S. J. Ketchum, had paid $400 on the note, and that under these facts he was entitled in equity to have Armstrong's 80 acre tract sold first for the satisfaction of the balance due on said note before the 52 acre tract of S. J. Ketchum should be sold. Armstrong admitted in his answer that he owed the notes sued on and that complainant was entitled to a sale of his 80 acre tract, and he concurred in the position of Ketchum that the latter was entitled first to have the 80 acre tract sold before the 52 acre tract should be sold. It is not disputed that S. J. Ketchum and his wife are accommodation makers and that the principal debtor on said $1,050 note is the defendant, Armstrong. The Chancellor sustained the position taken by these defendants, and after rendering a decree against them on the respective notes, he ordered a sale of the lands so mortgaged, providing that the tract of 80 acres mortgaged by Armstrong would be first sold for the payment of the remainder due on the $1,050 note and the costs of this cause and that if said land should bring the amount of said indebtedness, the land mortgaged by defendant, Ketchum, would not be sold and the mortgage debt as to his land would be satisfied; that in the event Armstrong's land should not bring the amount of the decree on the $1,050 note and costs, the land of S. J. Ketchum would be sold and the proceeds applied to the payment of the remainder of the judgment on said note. He also ordered that whatever the tract of 80 acres should bring over and above the amount due on the $1,050 note, be applied in payment of the amount of the decree based on the second mortgage note for $925. From the portions of the decree ordering a sale first of Armstrong's land and a release of Ketchum's land in the event that such sale should bring a sufficient sum to satisfy the note for $1,050 and the costs, the complainant, H. Clay Gates, appealed to this court, and his assignments of error involve solely the action of the Chancellor excepted to as aforesaid.

He insists that the court should have decreed that as between the parties, Armstrong is to be considered as the principal debtor and that the proceeds of his tract shall first be consumed in the payment of both judgments and costs, and any deficit shall be charged against the proceeds of the Ketchum land; in other words, that if Armstrong's land shall not bring a sum sufficient to pay both debts and the costs, then Ketchum's land shall be sold and the

proceeds applied as far as necessary to the satisfaction of the balance of both debts then remaining; but that in no event should the proceeds of sale of the Ketchum land be subjected to the payment of a greater sum than the judgment on the first mortgage note of $1,050. It is thus apparent that appellant is willing that Ketchum be treated as a surety to the extent of selling Armstrong's land first, but that if it should not bring a sum sufficient to pay both debts, the method proposed would result in Ketchum paying a part of the second mortgage debt, for which he is not liable. Under the Negotiable Instruments Act, section 3516A4, Shannon's Code, Ketchum is primarily liable to Gates upon the notes secured by the first mortgage. He, therefore, cannot impose upon him whatever attitude he may sustain as surety towards Armstrong, so as to affect the rights of Gates as the payee or holder. Merriman v. Parkey, 136 Tenn., 645. But the Chancellor has not placed in jeopardy any rights or interest of Gates under his first mortgage, so that does not amount to any imposition upon Gates within the meaning of the rule set forth in Merriman v. Parkey.

The equities of a surety, as between himself and his principal, may yet be considered because the real contract between the parties can be shown now as fully as it could have been shown before the passage of the Negotiable Instruments Act. Bank v. Busby, 120 Tenn., 654, 120 S. W., 390; O'Neal v. Stewart, 281 Fed. Rep., 716. In the latter case, construing the Uniform Negotiable Instruments Act as adopted in Tennessee, the United States Circuit Court of Appeals held that as respecting the right of subrogation, said act did not change the existing law as to the relations of joint makers or endorsers as between themselves, but applied only to relations between payors and payee. The crucial question is whether or not the rights of the parties must be treated as if Ketchum has anything to do with, or is affected by, the second mortgage. It is apparent that Gates was fully aware of the relation of these parties inter sese; in other words, that Ketchum was really a surety for Armstrong. He, therefore must be deemed to have dealt with regard to their equities, though they were both primarily bound to him upon the first mortgage note.

The doctrine is universally settled that, between an earlier equity and a subsequent legal estate even when purchased for a valuable consideration, the one who acquires the subsequent estate or interest with notice of the earlier equity in favor of another person, will hold his acquisition subject and subordinate to such outstanding interest or right; in the contest for priority between the two claimants he must be postponed; he takes his interest burdened with the obligation of recognizing, providing for and carrying out

the previous equity according to its nature. Pomeroy on Equity (11 Ed.), sec. 730 and cases there cited.

As was quaintly said by the Supreme Court of Appeals of Virginia in Bell v. McConkey, 82 Va., 176:

"When all the parties are before it, as between principal and surety, a court of equity will put the saddle on the right horse in the first instance."

In that case it was held that the court will respect the equities of the debtors inter sese though they are all primarily liable to the creditor.

It is axiomatic that sureties are favored in equity, so far as they may be without impairing the obligations which they have undertaken. Here it does not appear that Gates as a junior incumbrancer has any legal right that would be paramount to the equities of Ketchum as surety as between himself and Armstrong upon the first mortgage note. The status of Ketchum was fixed prior to that of Gates as junior incumbrancer. If their equities were equal, he who was prior in time would be stronger in right. Williams v. Adkinson, 3 Sneed, 586.

We are unable to see how under any rule of law or equity the rights of Ketchum can be affected by the status of Gates under his second mortgage. In our opinion this is not a case for application of the equitable doctrine of marshalling securities. That rule is not applied as against a surety. Pomeroy on Equity (4 Ed.), sec. 2291. Nor is the rule ever applied to the detriment of either claimant. The primary obligation of Ketchum is preserved in the provision of the Chancellor's decree that should the land of Armstrong not bring a sum sufficient to pay the debt secured by the first mortgage, the land of Ketchum shall be sold to satisfy the balance remaining. To go further than this would be to cause Ketchum's land to bear at least a part of the burden of a second mortgage debt on Armstrong's land to which Ketchum was in no way a party. The general rule is that where the principal and his surety have both mortgaged property for the debt of the principal, the surety is entitled to have the property of the principal sold first to satisfy the debt. Brandt on Suretyship, sec. 260; Wiltse on Mortgage Foreclosure, sec. 568; Neimcewicz v. Gahn, 3 Paige, Ch. 614; Keel v. Levy, 19 Ore., 450; Pacific Guano Co. v. Anglin, 82 Ala., 492; Gresham v. Ware, 79 Ala., 192; Bruce v. Laing (Tex. Civ. App.), 64 S. W., 1019; Schneider v. Sellers (Tex. Civ. App.), 618 S. W., 541; Bell v. McConkey, 82 Va., 176; Blanchard v. Naquin, 116 La. 806; 41 So. 99; Ogden v. Clidden, 9 Wis. 46; Drake v. Bray, 29 N. J. Eq., 1-36; Hoppes v. Hoppes, 123 Ind., 397, 24 N. E., 139.

We are, therefore, of the opinion that there is no error in the decree of the Chancellor and it is affirmed. The costs of this appeal will be adjudged against the appellant and the surety on his appeal bond.

Faw, P. J., and Crownover, J., concur.