The original bill in this cause was filed to have a judgment of the Circuit Court of Cannon County, in favor of the First State Bank and against I.C. Howeth, personally, and as administrator of R.B. Howeth, deceased, set aside on the grounds of fraud, accident and mistake, and to recover the amount that had been collected on said judgment.
On July 23, 1927, Eunice Mildred Finley (one of the heirs of R.B. Howeth, deceased), a minor, by her next friend, filed this bill in the Chancery Court of Cannon County to have an administrator ad litem appointed to properly represent the interests of the estate of R.B. Howeth, deceased; to have said judgment set aside on the grounds of failure of consideration and because I.C. Howeth forged the name of R.B. Howeth on the two notes to the bank, which bank fraudulently obtained a judgment on said notes in the Circuit Court against R.B. Howeth's estate; to have said cause re-tried and to recover all moneys collected from the estate of R.B. Howeth, deceased, on said judgment.
The First State Bank became insolvent on or about August 8, 1923, and H.L. Grigsby, Superintendent of Banks for the State of Tennessee, was appointed receiver, hence he was made a defendant in this case.
Defendants, Jesse Davenport, First State Bank and H.L. Grigsby, Receiver, filed demurrers to the bill, and later filed answers.
The court appointed Walter Hancock administrator ad litem for the estate of R.B. Howeth, deceased, and he filed an answer and a cross bill, making the First State Bank and H.L. Grigsby, Receiver, defendants to the cross-bill, in which he asked that said judgment be set aside and he asked for a recovery of the money collected, as prayed in the original bill.
Depositions were taken by both sides, and on January 8, 1930, the cause was heard upon the pleadings, proof and stipulations filed.
The Chancellor found and held that R.B. Howeth directed I.C. Howeth to sign his name to the two notes upon which judgment was rendered in the Circuit Court, and that R.B. Howeth was an *Page 130 
accommodation surety for his son, I.C. Howeth, who executed the notes to the bank for borrowed money and to cover overdrafts.
The Chancellor found that I.C. Howeth did not forge his father's name to the two notes, that R.B. Howeth was an accommodation endorser, and there was no fraud on the part of the bank in obtaining the judgment in the Circuit Court.
The Chancellor dismissed the original bill and cross-bill, but rendered judgment against the defendant, I.C. Howeth, in the sum of $13,509.23 and the costs of the suit.
From the Chancellor's decree the complainant and the administrator ad litem appealed to this court and have assigned errors, which are, in substance, as follows:
 "The Chancellor erred in dismissing complainant's bill and the cross-bill of the administrator ad litem:
 "(1) Because there was no evidence to support the findings and the decree of the Chancellor.
 "(2) Because the judgment in the Circuit Court against I.C. Howeth, administrator of the estate of R.B. Howeth, deceased, was based upon two notes, one for $3481.42, and the other for $5012.88, sued on, and the name of R.B. Howeth, deceased, nowhere appears on said two notes.
 "(3) Because the signature of R.B. Howeth to the two notes sued on, was forged, or was signed thereon without his authority or consent.
 "(4) Because as to said note for $3481.42, if signed by R.B. Howeth, or if his signature was authorized, the same was attached to said note long after it had been executed, delivered and accepted by the bank, and he was merely an accommodation surety thereon, hence the note was executed by him without consideration and is not binding on his estate, and therefore the judgment based thereon was void.
 "(5) Because, as to the note for $5012.88, if signed by R.B. Howeth, or if his signature was authorized, the same was attached to said note long after it had been executed, delivered and accepted by the bank, and he was merely an accommodation surety thereon, hence the note was executed by him without consideration and is not binding on his estate, and therefore the judgment based thereon was void.
 "(6) Because the time of payment was extended many times after maturity of said notes and after the death of the accommodation surety, R.B. Howeth.
 "(7) Because there was collusion between the First State Bank and I.C. Howeth to have the name of R.B. Howeth signed on said two notes and in extending the time of payment beyond the dates of maturity, without the knowledge and consent of R.B. Howeth, which released his estate." *Page 131 
We are of the opinion that there was not only evidence to support the decree of the Chancellor, but that the preponderance of the evidence was in favor of his decree.
I.C. Howeth was a merchant of Cannon County. His father, R.B. Howeth, was a well-to-do farmer of that county. I.C. Howeth had a bank account in the First State Bank of Woodbury in Cannon County.
Some time in the year 1918 I.C. Howeth acquired the morphine habit as the result of illness, and was a morphine addict. During the years from 1918 to 1923 he was to some extent under the influence or morphine, and it is claimed could not properly look after his affairs, which fact was well known in that community.
The bank was in the habit of permitting I.C. Howeth to overdraw his account and then requiring him to come in and execute notes for the overdraft.
On February 15, 1920, a note of I.C. Howeth's for $3481.42 fell due, and a note for this amount with $140 interest added to the face of it, making $3621.42, dated February 15, 1920, due in six months, was filled out and delivered to the bank, but was not accepted, and on June 28, 1920, I.C. Howeth signed this note and his father, R.B. Howeth, authorized I.C. Howeth to sign his name to said note as surety.
On June 28, 1920, I.C. Howeth executed another note to the bank, a new note, for $5012.88, due in ninety days. His father, R.B. Howeth, was present and authorized I.C. Howeth to sign his name as surety to this note. The two notes thus executed were delivered to and accepted by the bank at that time.
When the $3621.42 note fell due on August 15, 1920, the time of payment was extended one year, on payment of interest, to August 15, 1921, and afterwards the time of payment was extended, on payment of interest, to August 15, 1922.
When the $5012.88 note fell due, on September 28, 1920, the time of payment was extended to December 30, 1922, on payment of interest.
R.B. Howeth died intestate in December, 1920, and I.C. Howeth qualified as his administrator.
In January, 1923, the bank brought suit on said notes in the Circuit Court of Cannon County against I.C. Howeth, individually, and as administrator of the estate of R.B. Howeth, deceased. No defense was made to said action and on February 12, 1923, judgment by default was entered for $9569.88 and $500 attorney's fee.
The first assignment, that there is no evidence to support the decree, is not well made, as the trial in this court is de novo, but as above stated the preponderance of the evidence is in favor of the decree, and this assignment will be overruled. *Page 132 
Complainant's assignment that the Chancellor erred in dismissing complainant's bill and the cross-bill of the administrator ad litem because said judgment in the Circuit Court was based upon the two notes sued on and that the name of R.B. Howeth no where appears on said notes, is not well made and must be overruled.
It is undisputed that the signature of the surety on the two notes was intended for that of R.B. Howeth. It is contended for complainant that the name appears on the notes "B.B. Howeth." The first initial in the first note looks as if it were a "B," but in the second note it looks as if it is an "R." But in both instances we can see that it could have been intended for an "R"; but as we view it this is entirely immaterial. There is no contention that it was the signature of another, but the claim is that because the signature of R.B. Howeth looks as if it was "B.B. Howeth" the judgment is therefore void.
Service of process was had on the proper party, the administrator of R.B. Howeth, deceased. At the trial the notes were exhibited to the court and it does not appear what other evidence was adduced at the trial in the Circuit Court, but no defense was made so far as the record shows that this signature was not executed by R.B. Howeth or that it was unauthorized. Judgment was entered on the notes against the estate of R.B. Howeth.
A misnomer must be pleaded in abatement or it is waived, and one is concluded by a decree rendered against him by a wrong name, if process was properly served upon him and he failed to plead the matter in abatement. Young v. South Tredegar Iron Co.,85 Tenn. 189, 2 S.W. 202; Maury County v. Lewis County, 1 Swan, 239; East Tenn. Ga. R.R. Co. v. Evans, 6 Heisk., 609.
The fact that the other heirs of R.B. Howeth knew nothing of this suit in the Circuit Court until after it was ended, cannot affect the result. The administrator was the only necessary party, and they were not proper parties to the suit.
We are of the opinion that the weight of testimony is that the two notes were not forged, but that the name of R.B. Howeth was signed to them with his authority and consent.
This fact is testified to by both Preston and Davenport, and is denied by no one except I.C. Howeth, who states that he had no authority from his father to sign his name to the notes but that Preston and Davenport required him to sign it, but at another time he testifies that he does not remember anything about signing it; hence this assignment must be overruled.
The fourth assignment is that the note for $3621.42 was signed by R.B. Howeth long after its execution by I.C. Howeth and its acceptance by the bank, hence it is insisted that said note was signed by R.B. Howeth without consideration and was therefore not binding *Page 133 
upon his estate. This contention is not well made and must be overruled.
Preston, cashier of the bank, and Jesse Davenport both testified that the note was executed by I.C. Howeth and R.B. Howeth at the same time, in their presence; and that I.C. Howeth signed R.B. Howeth's name to both notes at his request and in his presence.
I.C. Howeth says he doesn't remember signing his father's name.
The bank records were introduced, which show the $3621.42 note, dated February 15, 1920, renewal of note due on that date, was registered on the bank's records as of the date of March 27, 1920, and was given the serial number 3574. D.F. Williams, Clerk Master, and also custodian of the bank's books, testified that it was customary for the bank to register a note after its acceptance and payment of interest. From all of this it is insisted that the bank had already accepted this note with the signature of I.C. Howeth alone, and that R.B. Howeth did not sign the note until June 28, 1920, and therefore his estate is not liable, as there was no consideration for his signature. This contention is not well made, because both Preston and Davenport testified that the note was not actually accepted until after it was signed by R.B. Howeth. There is no testimony to the contrary except that herein cited. Hence we hold that the note was not accepted until after it was signed by R.B. Howeth and that this was a sufficient consideration, and that he became primarily liable on the note.
The assignment that the $5012.88 note was signed by R.B. Howeth after the execution and the acceptance of the same by the bank, is not well made and must be overruled. The weight of the testimony is that the signature of R.B. Howeth was authorized and signed on the date that it was delivered and that it was not accepted by the bank until after it was signed.
The assignment that the surety, R.B. Howeth, was released by the extension of time of payment of the notes without notice, is not well made, for the reason that an accommodation surety is primarily liable.
R.B. Howeth appears on the face of both notes to be a joint maker, but the extrinsic proof shows that he was an accommodation surety. This makes him primarily liable for the payment of the notes. Shannon's New Code, sec. 3516a4; Gates v. Armstrong,3 Tenn. App. 75.
 "A person signing a note as maker, but shown by extrinsic evidence to have been an accommodation maker was primarily liable, and is not discharged by an agreement, although made without his knowledge or consent, between the holder and maker, for valuable consideration, to extend the time of payment." Graham v. Shephard, 136 Tenn. 418, 189 S.W. 867; O'Neal v. Stuart, 281 Fed., 715; Reeder v. Bank, 2 Higgins, 713. *Page 134 
The assignment that there was collusion between the officials of the bank and I.C. Howeth to defraud the estate of R.B. Howeth, is not well made.
The weight of the testimony is that there was no fraud, collusion, or deceit, and this assignment must be overruled.
There is no proof that I.C. Howeth was a person of unsound mind. It is proven that he was a morphine addict, but it is not shown that his mind was affected. His mother, knowing that he was an addict, permitted him to be qualified as administrator of R.B. Howeth's estate, and to attend to the business of that estate for seven years, without objection.
Complainant has failed to prove that she was prevented by fraud, accident, or mistake, from making a defense in the Circuit Court, and that she had a meritorious defense to said suit, and the Chancellor was not in error in dismissing her bill. Gibson's Suits in Chancery, secs. 1206-7. We concur in the finding of the Chancellor as set out in his opinion and decree.
It results that all the assignments of errors must be overruled and the decree of the Chancellor affirmed. The cost of the cause, including the cost of the appeal, is adjudged against the appellants and the sureties on the appeal bond, for which execution may issue.
Faw, P.J., and DeWitt, J., concur.